759 N.W.2d 464 (2009)
276 Neb. 1009
Aaron KOCH et al., Appellants,
v.
CEDAR COUNTY FREEHOLDER BOARD, Appellee, and
Richard R. Pinkelman et al., Intervenors-Appellees.
Aaron Koch et al., Appellants,
v.
Cedar County Freeholder Board, Appellee, and
Dennis A. Arens, Sr., et al., Intervenors-Appellees.
Nos. S-07-837, S-07-1026.
Supreme Court of Nebraska.
January 9, 2009.
*467 David A. Domina, of Domina Law Group, P.C., L.L.O., Omaha, for appellants.
Jeffrey L. Hrouda, Norfolk and George L. Hirschbach, Hartington, for appellees and intervenors-appellees.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
HEAVICAN, C.J.

INTRODUCTION
The Cedar County freeholder board approved the transfer of real estate from the Wynot Public School District to the Hartington Public School District. Several taxpayers from the Wynot school district appealed to the district court, which affirmed the Cedar County freeholder board's actions. Those taxpayers now appeal the judgments of the district court.

FACTUAL BACKGROUND
In 2006, approximately 400 individual owners of real estate (freeholders) filed petitions with the Cedar County freeholder board (hereinafter the Board) asking that their respective properties be transferred from the Wynot Public School District to the Hartington Public School District as permitted by Neb.Rev.Stat. § 79-458 (Cum. Supp. 2006). Over the course of three board meetings held on September 28, 2006, and February 15 and May 25, 2007, the freeholders' petitions were approved and the property transferred from the Wynot school district to the Hartington school district.
Aaron Koch, Vanita Arndt, Duane Bair, James Eskens, and Nancy Rolfes (collectively the taxpayers)all taxpayers from the Wynot school districtobjected to the transfers and appealed to the district court pursuant to § 79-458(5). The district court permitted many of the original petitioners *468 to intervene, concluding they were necessary parties to the actions in the district court. The Board's actions at the September 28, 2006, and February 15, 2007, meetings were consolidated into one action before the district court and are now at issue in case No. S-07-837; the actions of the Board at the May 25 meeting were separately decided and are on appeal in case No. S-07-1026.
The parties stipulated to the following: (1) Both the Wynot and the Hartington school districts are Class III districts; (2) in the 2004-05, 2005-06, and 2006-07 school years, the Wynot school district had an average daily attendance in grades 9 through 12 of fewer than 60 students; (3) effective for the 2006-07 school year, the Wynot school district had voted to exceed the maximum levy limit under Neb.Rev. Stat. § 77-3442 (Cum. Supp. 2006); (4) the high school for the Wynot school district was within 15 miles on a maintained public highway or road of the high school of the Hartington school district; (5) neither the Wynot school district nor the Hartington school district was a member of a learning community; (6) the Hartington school district is an accredited district; (7) all of the freeholders' petitions filed before the Board were approved by a majority of the members of the school board and board of education of the Hartington school district prior to the hearings before the Board.
After a hearing, the district court transferred to the Hartington school district all real estate determined to be contiguous to that district. The taxpayers appealed. The cases were consolidated for briefing and oral argument, and we granted the taxpayers' petition to bypass.

ASSIGNMENTS OF ERROR
On appeal, the taxpayers assign that (1) the Board and the district court lacked subject matter jurisdiction, because the freeholders' petitions before the Board failed to allege necessary statutory components, failed to bear the signatures of all property owners, failed to describe real estate in legally sufficient terms, and failed to allege that either the Hartington school district or the Wynot school district was not part of a learning community; (2) the district court erred in allowing the freeholders to intervene; (3) the district court erred in allowing the freeholders to file new petitions correcting the deficiencies in their original petitions; (4) the district court erred in transferring the property in question due to the various deficiencies of the petitions; and (5) the district court erred in its interpretation of the meaning of "contiguous" and therefore erred in allowing the transfer of the real estate in question because it was not contiguous.

STANDARD OF REVIEW
The actions of a county freeholder board under § 79-458 sound in equity.[1] On appeal from an equity action, an appellate court resolves questions of law and fact independently of the trial court's determinations.[2]

ANALYSIS
§ 79-458.
Because § 79-458 is central to the disposition of these appeals, we first set forth the relevant portions of that statute.
(1) Any freeholder or freeholders, person in possession or constructive possession as vendee pursuant to a contract of sale of the fee, holder of a school land lease under section 72-232, or entrant *469 upon government land who has not yet received a patent therefor may file a petition with a board consisting of the county assessor, county clerk, and county treasurer, asking to have any tract or tracts of land described in the petition set off from an existing Class II or III school district in which the land is situated and attached to an accredited district which is contiguous to such tract or tracts of land if:
(a) The Class II or III school district has had an average daily membership in grades nine through twelve of less than sixty for the two consecutive school fiscal years immediately preceding the filing of the petition;
(b) The Class II or III school district has voted to exceed the maximum levy established pursuant to subdivision (2)(a) of section 77-3442, which vote is effective for the school fiscal year in which the petition is filed or for the following school fiscal year;
(c) The high school is within fifteen miles on a maintained public highway or maintained public road of another high school; and
(d) Neither school district is a member of a learning community.
For purposes of determining whether a tract of land is contiguous, all petitions currently being considered by the board shall be considered together as a whole.
(2) The petition shall state the reasons for the proposed change and shall show with reference to the land of each petitioner: (a) That (i) the land described in the petition is either owned by the petitioner or petitioners or that he, she, or they hold a school land lease under section 72-232, are in possession or constructive possession as vendee under a contract of sale of the fee simple interest, or have made an entry on government land but have not yet received a patent therefor and (ii) such tract of land includes all such contiguous land owned or controlled by each petitioner; (b) that the land described in the petition is located in a Class II or III district that is not a member of a learning community, the district has had an average daily membership in grades nine through twelve of less than sixty for the two consecutive school fiscal years immediately preceding the filing of the petition, the district has voted to exceed the maximum levy established pursuant to subdivision (2)(a) of section 77-3442 as provided in subdivision (1)(b) of this section, and the land is to be attached to an accredited school district which is contiguous to such tract or tracts of land and which is not a member of a learning community; and (c) that such petition is approved by a majority of the members of the school board of the district to which such land is sought to be attached.
(3) The petition shall be verified by the oath of each petitioner. Notice of the filing of the petition and of the hearing on such petition before the board constituted as prescribed in subsection (1) or (4) of this section shall be given at least ten days prior to the date of such hearing by one publication in a legal newspaper of general circulation in each district and by posting a notice on the outer door of the schoolhouse in each district affected thereby, and such notice shall designate the territory to be transferred. Such board shall, after a public hearing on the petition and a determination that all requirements of this section have been complied with, change the boundaries of the school districts so as to set off the land described in the petition and attach it to such district pursuant to the petition.
. . . .

*470 (5) Appeals may be taken from the action of such board or, when such board fails to agree, to the district court of the county in which the land is located within twenty days after entry of such action on the records of the board by the county clerk of the county in which the land is located or within twenty days after March 15 if such board fails to act upon such petition, in the same manner as appeals are now taken from the action of the county board in the allowance or disallowance of claims against the county.
We are aware that § 79-458 has been amended several times since the first freeholder petitions were filed in this case. The parties have not presented any argument regarding these amendments, and we have determined that these changes do not affect the analysis of these appeals. Therefore, we will cite to the 2006 version of the statute for the sake of simplicity and convenience.

Subject Matter Jurisdiction.
In their first assignment of error, the taxpayers argue that the district court lacked subject matter jurisdiction over the freeholders' petitions. In particular, the taxpayers contend that the petitions filed before the Board failed to comply with the requirements of § 79-458, because the petitions failed to allege necessary statutory components, failed to bear the signatures of all property owners, failed to describe real estate in legally sufficient terms, and failed to allege that the Hartington and Wynot school districts were not part of a learning community. The taxpayers assert that such deficiencies prevented the Board, and in turn the district court, from exercising jurisdiction over the petitions.
We agree that the filing of a petition "asking to have any tract or tracts of land ... set off from an existing Class II or III school district"[3] is required under § 79-458 before the Board has jurisdiction to transfer the requested tracts of land from one school district to another. However, we disagree with the taxpayers' contention that the allegations in that petition must contain no deficiencies before the Board can exercise jurisdiction.
First, many of the so-called deficiencies alleged by the taxpayers are not necessarily deficiencies within the meaning of § 79-458. The taxpayers first contend that the petitions filed before the Board had insufficient legal descriptions. But this court has held that "`[a]n error in the description will not invalidate the petition [to alter a school district boundary] where it is clear from a reading of the entire petition what land is intended,'"[4] and we have noted that such error will not defeat the jurisdiction of the Board.[5] And there is no argument that the descriptions were insufficient to describe the land in question, only that the description was not a complete legal description. We therefore conclude that the insufficiency of certain legal descriptions does not prevent the Board from exercising jurisdiction over the petitions.
The taxpayers next argue that some of the petitions lacked the signatures of all necessary property owners. We note that the statute does not explicitly require the approval of all property owners, but instead, of all petitioners.[6] We *471 decline to hold that the failure to have all property owners sign the relevant petition prevents the Board from exercising jurisdiction when such is not explicitly required by statute. Moreover, notice of any hearings before a freeholder board is required under the statute[7]; thus, landowners also have an opportunity to object to the transfer, if desired.
The taxpayers also assert that some of the petitions lacked proper notarization and were therefore invalid. The statute does require that the petitions filed before the Board be verified,[8] though it does not explicitly set forth how the petition should be verified. Assuming the taxpayers are correct in asserting that the lack of a proper notary would prevent a petition from being verified under the statute, we nevertheless conclude that such does not affect the Board's jurisdiction, as this court has previously held that the failure to properly verify a petition does not affect the subject matter jurisdiction of a court.[9]
We agree that the omission of the allegation that neither district was part of a learning community was a deficiency in the pleading.[10] However, we conclude that this deficiency did not defeat the Board's jurisdiction. This is so because at the time of the filing of these petitions before the Board, the relevant statute, Neb.Rev.Stat. § 79-2102 (Cum. Supp. 2006), provided that requests to form a learning community be made with the Secretary of State by March 1 in order to be effective on September 1. This statute was not effective until July 14, 2006. As such, the first deadline to form a learning community was March 1, 2007, with that learning community to take effect on September 1. At the time the petitions were filed in September 2006, it would have been a legal impossibility for either school district to be part of a learning community. Under such circumstances, we conclude that the failure to allege that neither district was part of a learning community did not defeat the Board's jurisdiction.
The district court did not lack jurisdiction over these cases. The taxpayer's first assignment of error is without merit.

Did District Court Err by Allowing Intervention?
In their second assignment of error, the taxpayers contend that the district court erred by granting the freeholders the right to intervene.
A review of the record reveals that following the decision of the Board, the taxpayers filed their appeal with the district court under § 79-458(5). However, the taxpayers failed to caption the freeholders as parties, nor was notice of the appeal served on the freeholders. The Board then filed a motion alleging the freeholders were indispensable parties under what is now codified as Neb. Ct. R. Pldg. § 6-112(b)(7). The district court sustained the Board's motion and directed the taxpayers to serve notice on the freeholders. The court's order gave the freeholders 30 days in which to file a petition in intervention if they so chose.
The taxpayers first contend that the petitions in intervention should not have been granted and that the freeholders were not indispensable parties. Intervention is authorized by Neb.Rev.Stat. § 25-328 (Reissue 2008), which provides:

*472 Any person who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or against both, in any action pending or to be brought in any of the courts of the State of Nebraska, may become a party to an action between any other persons or corporations, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the action, and before the trial commences.
The interest required as a prerequisite to intervention under § 25-328 is a direct and legal interest in the controversy, which is an interest of such character that the intervenor will lose or gain by the direct operation and legal effect of the judgment which may be rendered in the action.[11]
In this case, the subject matter of the appeal before the district court is whether the Board should have transferred the freeholders' property from the Wynot school district to the Hartington school district. And the freeholders were the parties to initially request the transfer of such property. It is difficult to comprehend how the freeholders would not have a direct and legal interest in the culmination of a process they began, a process that determines the school district in which their properties are located.
Moreover, it seems clear that the freeholders are indispensable parties. An indispensable or necessary party to a suit is one whose interest in the subject matter of the controversy is such that the controversy cannot be finally adjudicated without affecting the indispensable party's interest, or which is such that not to address the interest of the indispensable party would leave the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience.[12] The freeholders also meet this definition for the same general reasons noted with respect to intervention. The taxpayers' action in the district court requires the court to determine whether the freeholders' property should be transferred from one school district to another. This controversy cannot be adjudicated without affecting the freeholders' interests.
The taxpayers' argument that the freeholders should not be permitted to intervene because "[w]hether the petitioners seeking land transfers are present before the Court or not, the Court must decide the validity of the Board's actions"[13] is not persuasive. As will be discussed in more detail below, the appeal before the district court is a trial de novo, which means a new hearing with new evidence. Thus, in this instance, the district court is not limited to deciding whether the Board's actions were valid, but instead will decide anew whether the transfer is valid. This should be done with input and argument from all affected parties, including the taxpayers and the freeholders.
The district court did not err by allowing the freeholders to intervene. The taxpayers' second assignment of error is without merit.

Did District Court Err in Transferring Property?
In its third assignment of error, the taxpayers argue that the freeholders *473 should not have been permitted to file amended petitions before the district court; in their fourth assignment of error, the taxpayers more generally argue that the district court erred in transferring the property in question to the Hartington school district because of the various deficiencies in the petitions filed before the Board.
The disposition of both these assignments of error is dependent upon an understanding of how the appeal provided by § 79-458(5) works. That subsection provides that appeals are taken "in the same manner as appeals are now taken from the action of the county board in the allowance or disallowance of claims against the county."
Neb.Rev.Stat. § 23-135 (Reissue 2007) provides for appeals from actions of a county board allowing or disallowing claims against the county. Case law under that section, as well as under § 79-458, provides that appeals are taken as a trial de novo before the district court.[14]
In In re Covault Freeholder Petition,[15] we explained the trial de novo:
When an appeal is conducted as a "trial de novo," as opposed to a "trial de novo on the record," it means literally a new hearing and not merely new findings of fact based upon a previous record. A trial de novo is conducted as though the earlier trial had not been held in the first place, and evidence is taken anew as such evidence is available at the time of the trial on appeal.
Miller v. School Dist. No. 69[16] and In re Covault Freeholder Petition both provide examples of the operation of a trial de novo. In Miller, certain property owners wished to transfer property from a school district in Pawnee County, Nebraska, an accredited school district, to a neighboring school district in Gage County, Nebraska, a nonaccredited school district. At that time, state law provided that property could not be transferred from an accredited district to a nonaccredited district. A statutory board composed of city officials from the counties at issue nevertheless approved the transfer, and that approval was upheld by the district court. We affirmed, noting the record showed that by the time of the district court's action upholding the transfer, the school district in Gage County had become formally accredited.
We discussed Miller in In re Covault Freeholder Petition, an opinion consolidating three appeals, in which one appeal presented similar facts. The freeholders wished to transfer property from a school district in Table Rock, Nebraska, to a school district in Pawnee City, Nebraska. The transfer was ordered by the county board and upheld by the district court. At that time, the statute provided that property could only be transferred from a nonaccredited district to an accredited district; as of the date of the transfer, the Table Rock school districtthe district from which transfer was soughtwas not accredited, while the Pawnee City school district was accredited. The district court held that it
could not consider the fact that Table Rock had been advised of its accreditation and would be accredited before the new school year began, but must instead *474 consider the status of the district as it existed on the date on which the freeholder board met. The district court also held that it could not consider evidence as to the status of Table Rock on the date of the trial, but was only to determine whether Table Rock was accredited on the date the freeholder board met.[17]
Citing Miller, this court disagreed:
[W]hen the trial court considered this matter ... it should have taken into account the fact that the district was now accredited and that the [petitioners] did not meet the necessary requirements of [the statute].
. . . .
In the instant case all of the requirements necessary to effect accreditation of the Table Rock school district had been met prior to the time that the statutory board ordered the transfer, and in fact the formal certification was granted prior to the time the children began school and prior to the time the district court acted on the appeal. It was therefore error for the district court not to consider those facts.[18]
Against this backdrop, we consider the taxpayers' arguments that the freeholders should not have been allowed to amend their petitions and that the deficiencies of the original petitions precluded the district court from approving the transfer by the Board.
Miller and In re Covault Freeholder Petition both make it clear that the district court is to consider the facts as they existed at the time of the trial before the district court in concluding whether the transfer was appropriate. And, aside from the various deficiencies discussed above, and contiguity, to be discussed below, there is no allegation that the transfers were not authorized under § 79-458. In fact, except for contiguity, the parties stipulated to each requirement under the statute.
We also conclude that because the district court was allowed to accept new evidence and consider the question of transfer anew, it did not err in allowing the filing of new or amended petitions.
The district court did not err in allowing the filing of new petitions or in transferring the property in question. The taxpayers' third and fourth assignments of error are without merit.

Contiguity.
In its fifth and final assignment of error, the taxpayers contend the district court erred in its interpretation of the term "contiguous" and therefore erred in concluding the properties in question were contiguous.
Section 79-458(1) provides that "[f]or purposes of determining whether a tract of land is contiguous, all petitions currently being considered by the board shall be considered together as a whole." Relying on this language, the district court, on its own, transferred land that was not necessarily contiguous to the Hartington school district, but whose contiguity could be established through other properties currently before the Board that were contiguous.
However, the taxpayers contend that this interpretation is incorrect, and the proper interpretation is that "all petitions being considered by the Board must be considered `together as a whole,' and if any petition lacks contiguity, then all lack *475 it."[19] The taxpayers reason that "the statutory objective is to allow land to transfer, but not in such huge quantities as to destroy the original school district, and make education of its students impossible."[20]
Absent anything to the contrary, an appellate court will give statutory language its plain and ordinary meaning.[21] And a plain reading of this language, considered in light of the rest of the statute, reveals that the district court's interpretation was correct.
Contrary to the taxpayers' assertion, there is no evidence that § 79-458 was intended to limit the amounts of land which could be transferred from one school district to another. Rather, the logical interpretation of the statute is the one utilized by the district court: that all petitions could be considered together in order to find that otherwise noncontiguous land is nevertheless contiguous. Lending further support to this conclusion is the fact that the taxpayers' interpretation could allow owners of noncontiguous land to defeat the petitions of owners of contiguous land by the simple act of also filing a petition before the Board.
If a limitation on the amount of land that could be transferred at one time had been intended by the Legislature, we conclude that such could have been accomplished much more directly by other means, notably, omission of the very language which we are now asked to interpret.
The district court's interpretation of "contiguous" was correct. The taxpayers' final assignment of error is without merit.

CONCLUSION
The decisions of the district court are affirmed.
AFFIRMED.
NOTES
[1] See In re Plummer Freeholder Petition, 229 Neb. 520, 428 N.W.2d 163 (1988).
[2] Shoemaker v. Shoemaker, 275 Neb. 112, 745 N.W.2d 299 (2008).
[3] § 79-458(1).
[4] Schilke v. School Dist. No. 107, 207 Neb. 448, 453, 299 N.W.2d 527, 530 (1980).
[5] Id.
[6] § 79-458(3).
[7] Id.
[8] Id.
[9] See Citizens Opposing Indus. Livestock v. Jefferson Cty., 269 Neb. 725, 695 N.W.2d 435 (2005).
[10] See § 79-458(2).
[11] Koch v. Aupperle, 274 Neb. 52, 737 N.W.2d 869 (2007).
[12] In re Adoption of Kenten H., 272 Neb. 846, 725 N.W.2d 548 (2007).
[13] Brief for appellants at 18.
[14] See Zeller Sand & Gravel v. Butler Co., 222 Neb. 847, 388 N.W.2d 62 (1986) (appeals under § 23-135). See, also, In re Covault Freeholder Petition, 218 Neb. 763, 359 N.W.2d 349 (1984).
[15] In re Covault Freeholder Petition, supra note 14, 218 Neb. at 769, 359 N.W.2d at 354.
[16] Miller v. School Dist. No. 69, 208 Neb. 290, 303 N.W.2d 483 (1981).
[17] In re Covault Freeholder Petition, supra note 14, 218 Neb. at 769, 359 N.W.2d at 354.
[18] Id. at 769, 359 N.W.2d at 354-55.
[19] Brief for appellants at 30 (emphasis in original).
[20] Brief for appellants at 30-31.
[21] In re Estate of Cooper, 275 Neb. 297, 746 N.W.2d 653 (2008).