Arlan D. Schellhorn and Dawn L. Schellhorn,
appellees and cross-appellants, v. Joseph L.
Schmieding and Carol L. Schmieding,
appellants and cross-appellees.

___ N.W.2d ___

Filed July 25, 2014.    No. S-13-418.

1. **Equity: Quiet Title.** A quiet title action sounds in equity.
2. **Equity: Appeal and Error.** On appeal from an equity action, an appellate
   court resolves questions of law and fact independently of the trial court's
   determinations.
3. **Adverse Possession: Proof: Time.** A party claiming title through adverse
   possession must prove by a preponderance of the evidence that the adverse
   possessor has been in (1) actual, (2) continuous, (3) exclusive, (4) notorious,
   and (5) adverse possession under a claim of ownership for a statutory period of
   10 years.
4. **Adverse Possession: Boundaries.** Proof of the adverse nature of the posses-
   sion of land is not sufficient to quiet title in the adverse possessor; the land
   itself must also be described with enough particularity to enable the court to
   exact the extent of the land adversely possessed and to enter a judgment upon
   the description.
5. **Laches.** The defense of laches is not favored in Nebraska.
6. ____. Laches occurs only if a litigant has been guilty of inexcusable neglect in
   enforcing a right and his or her adversary has suffered prejudice.
7. **Laches: Equity.** Laches does not result from the mere passage of time, but
   from the fact that during the lapse of time, circumstances changed such that
   to enforce the claim would work inequitably to the disadvantage or prejudice
   of another.
8. **Easements.** The law treats a claim of prescriptive right with disfavor.
9. **Easements: Proof: Time.** A party claiming a prescriptive easement must show
   that its use was exclusive, adverse, under a claim of right, continuous and unin-
   terrupted, and open and notorious for the full 10-year prescriptive period.

Appeal from the District Court for Seward County: Karen
B. Flowers, Judge. Affirmed.

Kent E. Rauert and Matthew R. Watson, of Svehla, Thomas,
Rauert & Grafton, P.C., for appellants.

Timothy L. Moll, of Rembolt Ludtke, L.L.P., for appellees.

Heavican, C.J., Wright, Connolly, Stephan, McCormack,
Miller-Lerman, and Cassel, JJ.

Wright, J.

## NATURE OF CASE

Arlan D. Schellhorn (Schellhorn) and Dawn L. Schellhorn sought to quiet title in their favor to a disputed parcel of land of which Joseph L. Schmieding (Schmieding) and Carol L. Schmieding were the record owners. The Schmiedings filed a cross-claim seeking a prescriptive easement in the event that title was quieted in the Schellhorns. The district court for Seward County quieted title in favor of the Schellhorns. The Schmiedings appeal, claiming the district court erred in quieting title in the Schellhorns and in not granting the Schmiedings a prescriptive easement. The Schellhorns cross-appeal, claiming that in the event that title should have been quieted in the Schmiedings, the Schellhorns should be granted a prescriptive easement. We affirm, and dismiss the cross-appeal as moot.

## SCOPE OF REVIEW

[1,2] A quiet title action sounds in equity. *Ottaco Acceptance, Inc. v. Larkin*, 273 Neb. 765, 733 N.W.2d 539 (2007). On appeal from an equity action, an appellate court resolves questions of law and fact independently of the trial court's determinations. *Koch v. Cedar Cty. Freeholder Bd.*, 276 Neb. 1009, 759 N.W.2d 464 (2009).

## FACTS

The Schellhorns and the Schmiedings are each record owners of parcels of agricultural property in Seward County. The Schellhorns own the east half of the northwest quarter of "Section Five (5), Township Eleven (11), North, Range Two (2), East of the 6th P.M.," and the Schmiedings own the northwest quarter of the northwest quarter of the same section. The disputed parcel is a 17-foot strip of land on the east edge of the northwest quarter of the northwest quarter. The disputed parcel includes a driveway and a strip of land along the east side of the driveway. On the west side of the driveway is a waterway or ditch that runs north and south, somewhat parallel to the driveway.

On July 2, 2012, the Schellhorns filed their operative petition to quiet title to the disputed parcel. The Schellhorns alleged that since at least the 1940's, the west boundary of the disputed parcel, and not the boundary of record, had been observed as the boundary between the Schellhorn and Schmieding properties. The Schmiedings denied the Schellhorns' claim and counterclaimed for a prescriptive easement over the disputed parcel in the event that the district court quieted title in the Schellhorns.

Trial was held on October 23, 2012. Evidence showed that the Schellhorns had farmed their property and used the disputed parcel since 1989 and had purchased their property at auction in 2001. Prior to the Schellhorns' purchase, three successive generations of the Luethke family had owned the Schellhorn property. In 2001, Ralph Luethke (Schellhorn's stepfather) and two relatives sold the property at public auction, and the Schellhorns were the successful bidders.

The Schmiedings purchased their property in 1987, and prior to that purchase, they had no knowledge of or experience with the property. The Schmiedings first expressed uncertainty about the location of the property line to the Schellhorns when they purchased the east half of the northwest quarter at public auction in 2001. Schmieding announced at the auction that there was uncertainty regarding the location of the boundary line between his property and the property sold to the Schellhorns.

During the years after the auction, Schmieding and Schellhorn had numerous conversations about the boundary line, but failed to reach any agreement about the boundary. In those conversations, Schellhorn always maintained that the waterway belonged to the Schmiedings and that the driveway belonged to the Schellhorns.

Luethke testified that as a child in the early 1940's, he was present when a fence was constructed on what was then believed to be the boundary line between the Schellhorn and Schmieding properties. Luethke said that the fence had been located between the now-existing driveway and waterway. The fence ran north and south, and replaced an

existing broken-down fence. Luethke testified that the fence was removed in 1958 or 1959 in order to build up the driveway and that the waterway was created to prevent water from flowing over the west side of the driveway.

Another section of fence ran south from a cornerpost located at the southeast corner of the Schmieding property to the southern boundary of the northwest quarter section. There was testimony that both this southern fence and the Luethke fence, running north and south, connected to the cornerpost. Schellhorn testified that he thought the cornerpost was the boundary between the Schellhorn property, the Schmieding property, and a property referred to by the parties as "the Baack property," which was the southwest quarter of the northwest quarter. Schellhorn admitted that without a survey, he could not know if the cornerpost marked the boundary or was located on the Baack property.

In 2001, the Schellhorns removed the southern section of fence to allow a center pivot on the Baack property to cross onto the Schellhorn property. The Schellhorns left the cornerpost and two other posts intact to maintain a physical record of the fence's location. Edward Hladky (who helped remove the fence), Schellhorn, and Luethke testified that they could look down the southern fence line northward and see that the natural extension of the fence proceeded between the waterway and the driveway on the disputed parcel. Schellhorn also testified that the driveway varied in width and bowed slightly to the east. Luethke testified that the sight line was consistent with the location of the Luethke fence removed in 1958 or 1959.

In 2006, Schmieding found a marker from a 1982 survey, and in 2010, he informed Schellhorn that he was going to consider the marker to be the record boundary between their properties. Schellhorn determined that the marker found by Schmieding was located 17 feet east of the cornerpost that he had treated as the boundary. This 17-foot strip of land is the disputed parcel.

Luethke testified that neither he nor his parents ever asked or ever would have asked for permission to use the driveway on the disputed parcel. Schellhorn and Hladky, who had farmed

the Schellhorn property since 1989, stated that they had used the 10- to 12-foot driveway as part of the Schellhorn property for that entire period and had never asked for or received permission to use it.

Schmieding testified that after the boundary dispute arose, he told Schellhorn that he did not have a problem with the Schellhorns' using the disputed parcel. Schmieding used the disputed parcel to access his field for irrigating, cultivating, planting, spraying chemicals, and harvesting, and Schellhorn was aware of this use.

Schmieding denied asking permission to use the driveway. Schmieding also denied that Schellhorn's use of the disputed parcel interfered with his use of it. Both parties maintained the disputed parcel by shredding grass and hauling in dirt. Schmieding said that he shredded grass on the disputed parcel several times a year and that his wife sprayed weeds and checked irrigation on the disputed parcel approximately once a year. Schellhorn testified that after he purchased the Schellhorn property in 2001, Schmieding never did maintenance work on the driveway.

In late 2010 and early 2011, Schmieding made preparations to farm the disputed parcel by filling in the waterway and chiseling the driveway area. Subsequently, the Schellhorns initiated their action to quiet title.

On April 12, 2013, the district court quieted title to the disputed parcel, specifically, the "East 17 feet of the NW ¼ of the NW ¼ of Section 5, Township 11, North, Range 2 East of 6th P.M., Seward County, Nebraska," in the Schellhorns. It denied the Schmiedings' claim for a prescriptive easement over the disputed parcel, reasoning that the Schmiedings' use of the driveway was presumed to be permissive and that no prescriptive easement was acquired.

## ASSIGNMENTS OF ERROR

On appeal, the Schmiedings assign that the district court erred in (1) quieting title of the disputed parcel in the Schellhorns, because they failed to produce evidence demonstrating the location of the actual recorded boundary line and therefore failed to provide an exact and definite description of the land

they claimed to have entered and possessed; (2) quieting title in the Schellhorns when their adverse possession claim was barred by the doctrine of laches; and (3) in the alternative, failing to find that the Schmiedings obtained a prescriptive easement for use of the driveway.

On cross-appeal, the Schellhorns assign that in the event they are not entitled to title of the disputed parcel by adverse possession, they are entitled to a prescriptive easement over the disputed parcel to continue to use it for a farm road and related farm purposes.

## ANALYSIS

### ADVERSE POSSESSION

[3] A party claiming title through adverse possession must prove by a preponderance of the evidence that the adverse possessor has been in (1) actual, (2) continuous, (3) exclusive, (4) notorious, and (5) adverse possession under a claim of ownership for a statutory period of 10 years. *Wanha v. Long*, 255 Neb. 849, 587 N.W.2d 531 (1998). The Schmiedings do not dispute that the Schellhorns met their burden of proof for each of these elements. Instead, the Schmiedings claim that the Schellhorns failed to produce any evidence demonstrating the physical location of the actual recorded boundary line. Without such evidence, the Schmiedings argue, the district court could not have known the distance between the recorded boundary line and the Luethke fence.

[4] Proof of the adverse nature of the possession of land is not sufficient to quiet title in the adverse possessor; the land itself must also be described with enough particularity to enable the court to exact the extent of the land adversely possessed and to enter a judgment upon the description. *Matzke v. Hackbart*, 224 Neb. 535, 399 N.W.2d 786 (1987). The court quieted title to the east 17 feet of the Schmiedings' property in the Schellhorns.

Evidence at trial established that the observed boundary between the Schellhorn and Schmieding properties was the still discernible Luethke fence line between the waterway and the driveway. Although the fence had been removed, the

cornerpost still existed. From that cornerpost, remnants of another fence ran south. That adjacent fence provided a sight line for the location of the Luethke fence line and, thereby, the observed boundary.

There was also evidence concerning the record boundary. Schmieding testified that he located a survey marker from 1982. Later, he informed Schellhorn that he intended to treat the marker as the record boundary. Although Schellhorn testified that he could not definitely identify the survey marker as the record boundary without another survey, the remainder of his testimony demonstrated his belief that the survey marker represented the record boundary.

Schellhorn measured the distance between the observed boundary line and the line corresponding with the survey marker, and he found the distance to be 17 feet. The 17-foot strip of land on the east side of the Schmieding property is the disputed parcel. The district court ruled in favor of the Schellhorns, quieting title to the "East 17 feet of the NW ¼ of the NW ¼ of Section 5, Township 11, North, Range 2 East of 6th P.M., Seward County, Nebraska." We conclude that the description of the disputed parcel set forth by the evidence is specific enough to support the district court's judgment.

The Schmiedings further contend that the disputed parcel could not be a regular shape, as claimed by the Schellhorns and awarded by the district court, because the driveway varies in size and bows to the east. The Schmiedings argue that the driveway forms the basis of Luethke's testimony regarding the western boundary of the disputed parcel. However, it is not the driveway that the Schellhorns presented as the observed boundary, but, rather, the historic Luethke fence line. There was no testimony that the fence line was not straight, and there was space in the disputed parcel for the 10- to 12-foot driveway to meander within it. In sum, evidence of a bowing driveway does not negate the evidence that the disputed parcel is regularly shaped. This argument lacks merit.

For the foregoing reasons, we reject the Schmiedings' first assignment of error.

## Laches

The Schmiedings contend that the Schellhorns' claim is barred by the doctrine of laches, because the Schellhorns and their predecessors in interest committed inexcusable neglect in failing to bring this action in a reasonable time period after it became ripe, thereby directly prejudicing the Schmiedings. The Schmiedings claim that they have been prejudiced because any witness they could have called on their behalf is deceased. Nothing in the record established that the Schmiedings were prejudiced by any of the Schellhorns' actions.

[5-7] The defense of laches is not favored in Nebraska. *Farmington Woods Homeowners Assn. v. Wolf*, 284 Neb. 280, 817 N.W.2d 758 (2012). Laches occurs only if a litigant has been guilty of inexcusable neglect in enforcing a right and his or her adversary has suffered prejudice. *Id.* Laches does not result from the mere passage of time, but from the fact that during the lapse of time, circumstances changed such that to enforce the claim would work inequitably to the disadvantage or prejudice of another. *Id.*

The Schellhorns and their predecessors, the Luethke family, had always treated the disputed parcel as their own, based on their understanding of the boundary line. Schellhorn communicated this to Schmieding when the latter expressed doubt about the boundary line. The Schellhorns had no reason to file a claim to quiet title to the disputed parcel until the Schmiedings began treating the disputed parcel as their own by preparing to farm it.

We find no prejudice to the Schmiedings. They were uncertain about the location of the boundary as early as 2001. They were aware of the Schellhorns' position on the matter but took no legal action to settle the boundary dispute.

The doctrine of laches does not apply in the instant case, and the district court did not err in quieting title to the disputed parcel in the Schellhorns.

## Prescriptive Easement

[8,9] We next consider whether the Schmiedings obtained a prescriptive easement for use of the disputed parcel. The law treats a claim of prescriptive right with disfavor. *Feloney v.*

*Baye*, 283 Neb. 972, 815 N.W.2d 160 (2012). We have held that a party claiming a prescriptive easement must show that its use was exclusive, adverse, under a claim of right, continuous and uninterrupted, and open and notorious for the full 10-year prescriptive period. *Id*.

Schellhorn testified that he dealt with the Schmiedings as if the driveway on the disputed parcel belonged to the Schellhorns. Schellhorn was aware that the Schmiedings routinely used the driveway on the disputed parcel for various purposes and did not deny the Schmiedings access to it. The Schellhorns did not impede the Schmiedings' use of the disputed parcel until the Schmiedings prepared to farm the disputed parcel and the Schellhorns initiated the quiet title action. Until the Schmiedings prepared to farm the disputed parcel, their use was permissive, and they failed to prove that such use was adverse. See *Lake Arrowhead, Inc. v. Jolliffe*, 263 Neb. 354, 639 N.W.2d 905 (2002) (permissive use is not adverse). The district court did not err in denying the Schmiedings' request for a prescriptive easement.

On cross-appeal, the Schellhorns request a prescriptive easement over the disputed parcel in the event that we conclude they have not acquired it by adverse possession. Because the district court did not err in quieting title to the disputed parcel in the Schellhorns, their cross-appeal is moot.

### CONCLUSION

For the reasons stated above, we affirm the judgment of the district court and dismiss the cross-appeal as moot.

AFFIRMED.