754 N.W.2d 730 (2008)
276 Neb. 378
Kathie STEFFEN, Personal Representative of the Estate of Jeffrey L. Steffen, deceased, Appellant,
v.
PROGRESSIVE NORTHERN INSURANCE COMPANY, Appellee.
No. S-07-509.
Supreme Court of Nebraska.
August 15, 2008.
*733 Mark A. Keenan, of Moyer, Egley, Fullner, Montag & Keenan, Madison, for appellant.
Stephan L. Ahl, of Wolfe, Snowden, Hurd, Luers & Ahl, L.L.P., Lincoln, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
McCORMACK, J.

NATURE OF CASE
Kathie Steffen brought this breach of contract claim against Progressive Northern Insurance Company (Progressive), the underinsured motorist carrier for her husband, Jeffrey L. Steffen. Jeffrey was killed when his tractor was struck from the rear by an underinsured motorist. The district court granted Progressive's motion for summary judgment on the grounds that the Progressive policy did not provide for underinsured motorist coverage for operation of a farm tractor and that the breach of contract claim was barred by the statute of limitations. We reverse the decision of the district court because the *734 exclusion in the Progressive policy is contrary to Nebraska law and remand the cause for further proceedings regarding the determination of the statute of limitations issue.

BACKGROUND
On November 17, 2003, Jeffrey was operating his tractor on Highway 84 just west of Hartington, Nebraska. Jeffrey was struck from behind by a westbound vehicle driven by an underinsured motorist, Mary A. Arens. The force of the impact ejected Jeffrey from his westbound tractor, and he landed in the eastbound lane. Shortly after the collision, Lyle J. Hochstein approached the scene of the accident, traveling eastbound at approximately 50 miles per hour in his 1980 Chevrolet pickup, pulling a loaded flatbed car hauler. As he crested a hill, Hochstein saw two vehicles stopped on the north side of the highway. As he passed the two vehicles, his vehicle drove over Jeffrey. Hochstein stated in his affidavit that he had no knowledge that a collision had occurred between Arens' vehicle and Jeffrey's tractor and that he did not observe Jeffrey's body in the road until after he stopped his vehicle. Jeffrey died at the scene of the accident. The parties stipulated that Jeffrey "died as a result of the injuries he sustained as a result of the collision between Arens' vehicle and his tractor."
At the time of the accident, Jeffrey was insured by a liability policy issued by Progressive. The policy also provided underinsured motorist (UIM) coverage of $100,000. The UIM coverage section of the policy included the following provisions:
Subject to the Limits of Liability, if you pay a premium for Underinsured Motorist Coverage, we will pay for damages, other than punitive or exemplary damages, which an insured person is entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury:
1. sustained by an insured person;
2. caused by an accident; and
3. arising out of the ownership, maintenance, or use of an underinsured motor vehicle.
(Emphasis in original.)
The Progressive UIM coverage had certain exclusions. The pertinent exclusion in this case provided:
1. Coverage under this Part III is not provided for bodily injury sustained by any person while using or occupying:
. . . .
d. a motorized vehicle or device of any type designed to be operated on the public roads that is owned by you or a relative, other than a covered vehicle.
(Emphasis in original.) The Progressive policy defined "vehicle" as follows:
"Vehicle" and "vehicles" mean a land motor vehicle:
a. of the private passenger, pickup body, or cargo van type;
b. designed for operation principally upon public roads;
c. with at least four wheels; and
d. with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.
However, "vehicle" and "vehicles" do not include step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.
(Emphasis omitted.) And a "covered vehicle" was defined as any "vehicle" listed in the declarations page and any additional "vehicle" or any replacement "vehicle" acquired during the policy period.
*735 Jeffrey's tractor was not listed on the declarations page of the Progressive policy, and Kathie admits that the tractor was purchased prior to the policy period. Kathie also concedes that a farm tractor is not included within the policy definition of "vehicle."
Arens' motor vehicle insurer offered to pay its policy limits of $100,000 to Kathie to settle her claim for wrongful death. Before accepting Arens' insurer's offer, Kathie notified Progressive of the tentative settlement offer in a certified letter. In that letter, Kathie also informed Progressive of her intent to make a UIM claim under the automobile liability policy. Progressive declined to exercise its right of substitution pursuant to Neb.Rev.Stat. § 44-6412(2) (Reissue 2004). In a letter to Kathie, Progressive explained that it was "unable to provide underinsured motorist coverage for this claim and accident" because the farm tractor Jeffrey was driving at the time of his death was not a "covered vehicle" under his policy with Progressive.
On August 1, 2005, Kathie accepted $100,000 in full settlement and satisfaction of all claims against Arens and Arens' insurer. She did not bring any action against Hochstein. On March 31, 2006, Kathie filed this complaint against Progressive for breach of contract. Both parties filed motions for summary judgment. The district court entered summary judgment for Progressive, concluding that the Progressive policy did not provide UIM coverage for operation of a farm tractor and that the claim was barred by the statute of limitations. The court denied Kathie's cross-motion for summary judgment. Kathie appeals.

ASSIGNMENTS OF ERROR
Kathie assigns, consolidated and restated, that the district court erred in (1) failing to find that the Progressive policy provided UIM coverage, (2) failing to find the exclusionary clause of the Progressive policy ambiguous, (3) failing to find the exclusionary clause of the Progressive policy contrary to public policy, (4) finding that the statute of limitations had expired, and (5) failing to grant her cross-motion for summary judgment.

STANDARD OF REVIEW
Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[1] In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[2]
The meaning of a contract and whether a contract is ambiguous are questions of law.[3] Statutory interpretation presents a question of law.[4] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[5]

*736 ANALYSIS

UIM POLICY EXCLUSIONS
Kathie argues on appeal that she is entitled to UIM coverage for two reasons: (1) She had a reasonable expectation of UIM coverage under the provisions of the policy, and (2) insofar as the policy may be interpreted as excluding coverage, it is contrary to the Uninsured and Underinsured Motorist Insurance Coverage Act (UUMICA).[6]
The UUMICA defines the required uninsured motorist (UM) and UIM coverage, the minimum amount of liability, and some exclusions to coverage.[7] Insurers may not issue policies that carry terms and conditions less favorable to the insured than those provided in the UUMICA.[8] In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[9]
Section 44-6408 of the UUMICA states that all automobile liability insurance policies issued with respect to any motor vehicle principally garaged in this state shall provide for protection "of persons insured who are legally entitled to recover compensatory damages for bodily injury, sickness, disease, or death from . . . the owner or operator of an underinsured motor vehicle." An "[u]nderinsured motor vehicle" is defined broadly as "a motor vehicle with respect to the ownership, operation, maintenance, or use of which there is bodily injury liability insurance . . . and the amount of the insurance . . . is less than. . . the damages for bodily injury, sickness, disease, or death sustained by the insured."[10] Certain exclusions to "underinsured motor vehicle" are set forth in § 44-6407, which are not applicable here.
We have explained that the purpose of the UIM provisions is to give the same protection to the insured as he or she would have had if injured in an accident caused by a vehicle covered by an adequate liability policy.[11] The language of § 44-6408 is broad, specifying only that it be for "persons insured" who are injured by an uninsured or underinsured motorist.
In § 44-6413, the UUMICA sets forth specific exclusions to this broad coverage. Section 44-6413 states that the UIM/UM coverage shall not apply when the bodily injury occurs (1) while the "insured" is occupying a motor vehicle owned by, but not insured by, the "named insured"; (2) while the insured is occupying an owned motor vehicle that is used as a public conveyance; (3) where the insured is struck by a vehicle owned by the named insured or a spouse or a relative residing with the named insured; or (4) where the statute of limitations has run on the claim.
Read together, the provisions of the UUMICA mandate that unless one of the exclusions set forth in § 44-6413 applies, an insured is entitled to recover for *737 injuries sustained in any accident, so long as the injuries were caused by an "[u]nderinsured motor vehicle"[12] or an "[u]ninsured motor vehicle."[13] It is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language.[14] Other courts and authorities reading similar language have likewise concluded that unless any statutory exclusion applies, the UIM/UM coverage is to be liberally construed.[15]
The general coverage provision of Progressive's policy with Jeffrey is similar in nature to the general coverage provisions set forth by § 44-6408. The policy provides that unless the policy exclusions apply, Progressive
will pay for damages . . . which an insured person is entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury:
1. sustained by an insured person;
2. caused by an accident; and
3. arising out of the ownership, maintenance, or use of an underinsured motor vehicle.
(Emphasis in original.) We agree with Kathie that the undisputed facts clearly satisfy the general coverage provisions of the policy with Progressive. Jeffrey was an "insured person" under the policy, and he sustained "bodily injury" in an "accident" which arose out of the use of an underinsured motor vehicle.
But Progressive asserts that the exclusion provision bars Jeffrey's recovery. Progressive argues that Jeffrey's tractor was either a "motor vehicle" or a "device of any type designed to be operated on the public roads." If this is the case, then, since the tractor was owned by Jeffrey, but was not a "covered vehicle" under the policy, the exclusion would apply. Kathie argues, however, that both under the policy definitions section of the contract with Progressive and under the UUMICA, a tractor is not considered a "motor vehicle." To the extent that a tractor is a "device of any type designed to be operated on the public roads," Kathie argues that this deviation from the exclusions specified in § 44-6413 is an impermissible reduction in the coverage mandated by the UUMICA. We agree.
Where a statutory omnibus provision is in conflict with the provisions of the insurance policy, the statute and not the policy provision is controlling.[16] As the Nebraska Court of Appeals explained in American States Ins. v. Farm Bureau Ins.,[17] where the exclusions provision of a policy was broader than the exclusions set forth by the UUMICA, then the policy exclusion was void:
It is obvious that an insurance company could reduce its exposure or risk by excluding coverage of certain events or conditions and that if enough exclusions are allowed, the public could receive markedly less than what the Legislature *738 has decreed it is entitled to. With each exclusion, the insured would receive less coverage than what the Legislature has directed. . . . What possible basis could the courts have for deciding that some exclusions unauthorized by statute are valid and some not?
While the UUMICA allows insurers to issue policies with terms and conditions more favorable to their insureds, they may not exclude coverage that is guaranteed by the act.[18] In other words, the exclusions provided by § 44-6413 are the only exceptions permitted to the coverage mandated by § 44-6408.
Progressive's policy exclusion states: "Coverage . . . is not provided for bodily injury sustained by any person while using or occupying . . . a motorized vehicle or device of any type designed to be operated on the public roads that is owned by you or a relative, other than a covered vehicle" (emphasis omitted). Section 44-6413(b) of the UUMICA states that coverage shall not apply to "[b]odily injury, sickness, disease, or death of an insured while occupying a motor vehicle owned by, but not insured by, the named insured or a spouse or relative residing with the named insured." Both provisions state that if the insured is injured in a vehicle that the insured or a family member could have insured, but did not, then there will be no coverage when that insured is injured by an uninsured or underinsured motorist.
But the language of the policy and the UUMICA diverges with respect to whether a farm tractor is a device included within this exemption. Under the UUMICA, the exemption is triggered by a "motor vehicle" which is owned by, but not insured by, the named insured or relative residing with the named insured. Section 44-6404 incorporates the definition of "motor vehicle" provided by Neb.Rev.Stat. § 60-501(4) (Reissue 2004): "any self-propelled vehicle which is designed for use upon a highway, including trailers designed for use with such vehicles, except. . . (d) farm tractors." Progressive's policy does not specifically exclude a tractor as a "motor vehicle." But the policy states in relevant part that the term "motor vehicle" means a land motor vehicle "of the private passenger, pickup body, or cargo van type . . . designed for operation principally upon public roads."
Progressive argues that this definition of "motor vehicle" includes tractors and that in any event, a tractor is a "device of any type designed to be operated on the public roads." Therefore, Progressive contends, a tractor is a "vehicle" or "device" that must be specifically covered if owned by the insured or a resident family member. Section 60-501, by specifically excluding farm tractors from the definition of "motor vehicle," trumps any definition in Progressive's policy to the contrary. Progressive's policy definition of a farm tractor as a motor vehicle is, therefore, an attempt to make the policy exclusion broader than the statutory definition in § 44-6413(b) and is void.[19] Accordingly, the district court erred in granting summary judgment on the ground that Jeffrey's tractor fell under the exclusions provision of the Progressive policy. We turn now to whether the court was correct in granting summary judgment on the alternative ground that Kathie had violated the statute of limitations provisions of the UUMICA and the policy.

STATUTE OF LIMITATIONS
As an alternative basis for its ruling in favor of Progressive, the district court determined *739 that the breach of contract action was barred by the statute of limitations. The court found that Kathie's failure to file suit against Arens and Hochstein within the 2-year statute of limitations for wrongful death claims barred the breach of contract claim against Progressive. Kathie asserts that the court erred in granting summary judgment in favor of Progressive on this basis and that her cross-motion for summary judgment should have been granted instead. As to Arens, we conclude that the statute of limitations is not a bar to the breach of contract action because Kathie settled with Arens before the wrongful death statute of limitations expired. As to Kathie's failure to sue or settle with Hochstein, we conclude that there are material issues of fact as to whether Hochstein was, in fact, a second tort-feasor against whom she would have had a "claim" that she allowed to expire.
We first address the court's conclusion that Kathie's failure to file suit against Arens before settling her claim barred her subsequent breach of contract action against Progressive. Under the UUMICA, UIM/UM coverage will not apply to "[b]odily injury, sickness, disease, or death of the insured with respect to which the applicable statute of limitations has expired on the insured's claim against the uninsured or underinsured motorist."[20] Progressive's policy with Jeffrey incorporated this provision by reference to the limitations periods set forth by applicable state law.
We have explained that § 44-6413(1)(e) bars as untimely an insured's claim for UIM/UM benefits when the statute of limitations on the underlying claim against the uninsured or underinsured motorist has "expired."[21] The purpose underlying § 44-6413(1)(e) is the protection of the insurer when it may have to pay UIM/UM benefits.[22] The statute makes it the responsibility of the insured to preserve the claim against the tort-feasor in order to protect the insurer's subrogation rights against the tort-feasor.[23]
But, the insured can prevent the statute of limitations from "expiring" either by filing a timely complaint[24] or by settling a claim[25] against the tort-feasor. The district court did not have the benefit of our decision in Reimers-Hild v. State[26] at the time of its ruling. In Reimers-Hild, we clarified that where the insured settles with the tort-feasor within the applicable statute of limitations, a suit against the UIM/UM insurer is not barred, regardless of whether any suit was ever filed against that tort-feasor. We conclude that the district court erred in finding that Kathie's claim for UIM/UM coverage was barred by her failure to sue Arens before the statute of limitations on Kathie's claim against her expired.
However, it does not appear from the record that Kathie either filed suit against or settled with Hochstein. We have never specifically been presented with a situation where an insured's injuries were caused by more than one uninsured *740 or underinsured tort-feasor. There is, however, no reason why the insured's obligations would change simply because multiple motorists are involved. As mentioned above, § 44-6413(1)(e) makes it the responsibility of the insured to preserve the claim against the tort-feasor in order to protect the insurer's rights against the tort-feasor.[27] Two statutory limitations periods are relevant to the insurer's claim because of the derivative nature of UIM coverage.[28] Allowing a claim to "expire" against one of several tort-feasors would prejudice the insurer in the same way that expiration of a claim against a single tort-feasor would. We determine that an insured must, utilizing the procedures set forth in § 44-6412, file suit against or settle with all UIM/UM tortfeasors involved in an automobile accident within the applicable statute of limitations pursuant to § 44-6413(1)(e).
Nevertheless, we do not read § 44-6413(1)(e) as requiring that the insured file an action against or settle with all motorists tangentially involved in an accident. To begin with, § 44-6413(1)(e)'s reference to the insured's "claim" against the uninsured or underinsured motorist presupposes the existence of such a claim. A "claim" for these purposes is the equivalent of a cause of action and consists of the fact or facts which give one a right to judicial relief against another.[29] By definition, an insured cannot have a "claim" against a person who did not injure the insured. It is axiomatic that the statute of limitations cannot "expire" on a claim that never existed.[30] In other words, § 44-6413(1)(e) is only applicable to tort-feasors who injured the insured.
This is consistent with the general scheme of the UUMICA. The UIM/UM coverage required by the act extends only to persons "who are legally entitled to recover compensatory damages" from the owner or operator of an uninsured or underinsured motor vehicle.[31] Settlement with "any person who may be legally liable for [the insured's] injuries" can bar recovery under UIM/UM coverage if the insurer was not properly notified and "such settlement adversely affects the rights of the insurer."[32]
It is obvious that the intent of § 44-6413(1)(e), to protect the insurer's rights against a purported tort-feasor, is only implicated if the insurer has rights against the tort-feasor arising from an underlying tort. "Uninsured motor vehicle"[33] and "[u]nderinsured motor vehicle"[34] are defined in terms of the relationship between the available insurance and the insured's damages. It is simply nonsensical to refer to a vehicle as being "uninsured" or "underinsured" unless the owner or operator of that vehicle is liable for contributing to the insured's injury.
The components of a series or collection of statutes pertaining to a certain subject matter which are in pari materia may be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions of the act are consistent, harmonious, and *741 sensible.[35] When the UUMICA is read as a whole, it is evident that a "claim against the uninsured or underinsured motorist," within the meaning of § 44-6413(1)(e), is a claim against a tort-feasor who caused the injury with respect to which the insured is claiming UIM/UM coverage. Thus, UIM/UM coverage is not barred where the person alleged to have been "the uninsured or underinsured motorist"[36] was not, in fact, a tort-feasor.
In this case, Kathie argues that the district court's finding that Hochstein was a "second potential tort-feasor" is without basis in law or fact. Specifically, Kathie contends that there are genuine issues of material fact as to whether Hochstein negligently operated his vehicle and, if so, whether that negligence was a proximate cause of any injury to Jeffrey. These questions of fact, Kathie argues, should have precluded summary judgment in favor of Progressive. We agree.
The record demonstrates that there is a genuine issue of material fact regarding Hochstein's negligence and whether that negligence was a proximate cause of Jeffrey's injuries. As part of the record, Hochstein submitted a sworn affidavit regarding the accident. Hochstein stated that he had no opportunity to observe Jeffrey on the highway and had no knowledge that a collision had occurred between Arens' vehicle and Jeffrey's tractor until after Hochstein stopped his vehicle. Hochstein stated that "[u]nder the circumstances, [he felt he] operated [his] vehicle appropriately." And Progressive admits in its brief that "there were sufficient facts to tender to a jury the question of ... Hochstein's role in contributing to [Jeffrey's] death."[37]
As the party moving for summary judgment seeking to be relieved of its UIM coverage obligations to Kathie, Progressive had the burden of showing that Hochstein was negligent and that his negligence was a proximate cause of Jeffrey's death. Progressive failed to introduce evidence showing that Hochstein was negligent and that his negligence was the proximate cause of Jeffrey's damages. Progressive, therefore, failed to carry its burden of showing that Hochstein was an underinsured tort-feasor with whom Kathie was required to settle or whom she must sue in accordance with § 44-6413(1)(e), before the statute of limitations expired on any potential claim against Hochstein.
Therefore, a genuine issue of material fact exists as to whether Hochstein was negligent and whether his negligence proximately caused Jeffrey's damages. We conclude that the district court erred in sustaining Progressive's motion for summary judgment. However, because there was a genuine issue of material fact, the court did not err in denying Kathie's cross-motion for summary judgment.

CONCLUSION
For the foregoing reasons, we reverse the district court's entry of summary judgment in favor of Progressive and remand the cause to the district court for further proceedings consistent with this opinion.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] Hofferber v. City of Hastings, 275 Neb. 503, 747 N.W.2d 389 (2008).
[2] Id.
[3] Coral Prod. Corp. v. Central Resources, 273 Neb. 379, 730 N.W.2d 357 (2007).
[4] In re Estate of Cooper, 275 Neb. 297, 746 N.W.2d 653 (2008).
[5] See State ex rel. Bruning v. R.J. Reynolds Tobacco Co., 275 Neb. 310, 746 N.W.2d 672 (2008).
[6] Neb.Rev.Stat. §§ 44-6401 to 44-6414 (Reissue 2004).
[7] American States Ins. v. Farm Bureau Ins., 7 Neb.App. 507, 583 N.W.2d 358 (1998).
[8] Id.
[9] Allied Mut. Ins. Co. v. Action Elec. Co., 256 Neb. 691, 593 N.W.2d 275 (1999).
[10] § 44-6406.
[11] See, Hood v. AAA Motor Club Ins. Assn., 259 Neb. 63, 607 N.W.2d 814 (2000); Allied Mut. Ins. Co. v. Action Elec. Co., supra note 9; Muller v. Tri-State Ins. Co., 252 Neb. 1, 560 N.W.2d 130 (1997); Stephens v. Allied Mut. Ins. Co., 182 Neb. 562, 156 N.W.2d 133 (1968).
[12] § 44-6406. See, also, § 44-6407.
[13] § 44-6405. See, also, § 44-6407.
[14] In re Petition of SID No. I, 270 Neb. 856, 708 N.W.2d 809 (2006).
[15] See, 16 Samuel Williston. A Treatise on the Law of Contracts § 49:35 (Richard A. Lord ed., 4th ed.2000); 2 Irvin E. Schermer & William J. Schermer, Automobile Liability Insurance § 25:3 (4th ed.2004); 1 Alan I. Widiss et al., Uninsured and Underinsured Motorist Insurance § 2.3 (3d rev. ed.2005). See, e.g., Ball v. Midwestern Ins. Co., 250 Kan. 738, 829 P.2d 897 (1992).
[16] Allied Mut. Ins. Co. v. Action Elec. Co., supra note 9.
[17] American States Ins. v. Farm Bureau Ins., supra note 7, 7 Neb.App. at 517-18, 583 N.W.2d at 365.
[18] See, American States Ins. v. Farm Bureau Ins., supra note 7; § 44-6413(4).
[19] See American States Ins. v. Farm Bureau Ins., supra note 7.
[20] § 44-6413(1)(e).
[21] Reimers-Hild v. State, 274 Neb. 438, 741 N.W.2d 155 (2007); Schrader v. Farmers Mut. Ins. Co., 259 Neb. 87, 608 N.W.2d 194 (2000).
[22] Dworak v. Farmers Ins. Exch., 269 Neb. 386, 693 N.W.2d 522 (2005).
[23] See, Reimers-Hild v. State, supra note 21; Dworak v. Farmers Ins. Exch., supra note 22.
[24] See Schrader v. Farmers Mut. Ins. Co., supra note 21.
[25] See Reimers-Hild v. State, supra note 21.
[26] Id.
[27] Id.; Dworak v. Farmers Ins. Exch., supra note 22.
[28] See Snyder v. EMCASCO Ins. Co., 259 Neb. 621, 611 N.W.2d 409 (2000).
[29] See Poppert v. Dicke, 275 Neb. 562, 747 N.W.2d 629 (2008).
[30] See Reimers-Hild v. State, supra note 21.
[31] See § 44-6408(1).
[32] See § 44-6413(1)(a).
[33] See § 44-6405.
[34] See § 44-6406.
[35] Japp v. Papio-Missouri River NRD, 271 Neb. 968, 716 N.W.2d 707 (2006).
[36] § 44-6413.
[37] Brief for appellee at 11.