765 N.W.2d 440 (2009)
277 Neb. 782
The METROPOLITAN COMMUNITY COLLEGE AREA, a political subdivision of the State of Nebraska and body corporate and politic, Appellant,
v.
CITY OF OMAHA et al., Appellees.
No. S-08-813.
Supreme Court of Nebraska.
May 15, 2009.
Robert T. Cannella and Gerald L. Friedrichsen, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., L.L.O., Omaha, and James R. Thibodeau, for appellant.
Paul D. Kratz, Omaha City Attorney, and Bernard J. in den Bosch, for appellees.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ.
HEAVICAN, C.J.

INTRODUCTION
The Metropolitan Community College Area (Metro) filed an action requesting that the City of Omaha (City) be permanently enjoined from condemning land owned by Metro. The district court denied Metro's request. Metro appeals.

*441 FACTUAL BACKGROUND
The facts of this case are largely stipulated. The City sought to condemn a portion of Metro's Elkhorn Valley campus. Metro's campus is within the city limits of the City and is located on the northeast corner of the intersection of U.S. Highway 6, also known as West Dodge Road, and Nebraska Highway 31, also known as 204th Street. There is just one entrance/exit to Metro's campus, which is located off of 204th Street. Metro's entrance/exit drive, while not a city street, is lined up across 204th Street with Cumberland Drive, which is a city street.
The City sought to widen and improve Metro's entrance/exit and also to connect a new street, 203d Street, from Veterans Drive north of campus, generally southward to the entrance/exit drive leading into Metro's campus. After acquisition of the property, what is currently the roadway leading into Metro's campus would become a city street and would be maintained by the City.
Because Metro was not responsive to the City's offer to purchase this property, the City filed a "Petition to Condemn Property" in Douglas County Court on March 14, 2008. On April 11, Metro filed an action seeking to enjoin the City from condemning the property. The parties agreed to the entry of a temporary injunction so that a trial on the permanent injunction could proceed more expeditiously.
Following a trial regarding the issuance of a permanent injunction, the district court dismissed Metro's request. The court reasoned that the land in question was currently being used as a street, and that such was not a specific public use. The court continued: "The result of this condemnation is that it will still be used as a street, except that it will be more capable of handling more traffic and provide more access to adjacent areas." Metro appeals.

ASSIGNMENT OF ERROR
Metro assigns, restated and consolidated, that the district court erred in concluding that the City had the authority to condemn Metro's property.

STANDARD OF REVIEW
[1] Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.[1]

ANALYSIS
[2] The City's general power of eminent domain is set forth in Neb.Rev.Stat. § 14-366 (Reissue 2007), which provides in part:
The city may purchase or acquire by the exercise of the power of eminent domain private property or public property which is not at the time devoted to a specific public use, for the following purposes and uses: (1) For streets, alleys, avenues, parks, recreational areas, parkways, playgrounds, boulevards, sewers, public squares, market places, and for other needed public uses or purposes authorized by this act, and for adding to, enlarging, widening, or extending any of the foregoing; and (2) for constructing or enlarging waterworks, gas plants, or other municipal utility purposes or enterprises authorized by this act.
(Emphasis supplied.)
[3, 4] The parties are in agreement that the property in question is public property. Thus, the sole issue presented by this appeal is the interpretation of the phrase "devoted to a specific public use" and whether Metro's use of the property in *442 question qualifies as such. Absent anything to the contrary, an appellate court will give statutory language its plain and ordinary meaning.[2] And it is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language.[3]
Metro contends that as the sole means of ingress and egress into its campus, its entrance/exit drive is devoted to a specific public use. The City, meanwhile, suggests that the land in question is not devoted to a specific public use, because Metro's mission is to provide educational services. The City argues that Metro's entrance/exit is not sufficiently related to that mission. The City also argues that because its use would not impair or destroy Metro's use of the drive and, in fact, the City would improve the drive, the City should be permitted to acquire the land by eminent domain.
We agree with Metro that its entrance/exit is devoted to a specific public purpose. Without such an entrance, it would not be possible for Metro to effectively administer its mission of providing educational services. This is particularly true where the drive in question is the sole means of ingress and egress into campus. We reject the City's suggestion that because the entrance/exit drive is not directly related to the providing of educational services, it fails to qualify as a "specific public use."
We also reject the City's contention that the exercise of eminent domain in this case is permissible because the City would "improve" the drive, and because the drive would continue to be used as an entrance/exit to Metro's campus, Metro's use would not be impaired or destroyed. The City cites authority for this proposition,[4] and indeed the exception suggested by the City appears to be the rule in many jurisdictions.[5]
However, this court is concerned only with the language of § 14-366, a statute which appears to be relatively unique. The language of that statute provides that the City may "acquire by the exercise of the power of eminent domain . . . public property which is not at the time devoted to a specific public use." This statute makes no allowance for eminent domain if the taking would not impair or destroy the existing use. Instead, the statute very clearly provides the City the authority to take public property only if that property is not "devoted to a specific public use." We decline to read into the statute the exception suggested by the City.
We conclude the district court erred in dismissing Metro's request for a permanent injunction. We therefore reverse the district court's decision and remand this cause with instructions to enter an injunction restraining the City from proceeding with its planned condemnation of a portion of Metro's entrance/exit drive.

CONCLUSION
The decision of the district court is reversed, and the cause is remanded to the district court with instructions.
REVERSED AND REMANDED.
STEPHAN, J., not participating.
NOTES
[1] Loves v. World Ins. Co., 276 Neb. 936, 758 N.W.2d 640 (2008).
[2] Koch v. Cedar Cty. Freeholder Bd., 276 Neb. 1009, 759 N.W.2d 464 (2009).
[3] Steffen v. Progressive Northern Ins. Co., 276 Neb. 378, 754 N.W.2d 730 (2008).
[4] See State ex rel. Md. Heights, Etc. v. Campbell, 736 S.W.2d 383 (Mo.1987).
[5] See 1A Julius L. Sackman, Nichols on Eminent Domain § 2.17 (3d ed. 2007).