765 N.W.2d 206 (2009)
277 Neb. 757
Tex R. HARVEY et al., appellants and cross-appellees,
v.
NEBRASKA LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION, appellee and cross-appellant.
No. S-08-520.
Supreme Court of Nebraska.
May 15, 2009.
*207 David D. Begley, P.C., L.L.O., Omaha, for appellants.
*208 Shawn D. Renner, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., Lincoln, for appellee.
Steven D. Davidson, of Baird Holm, L.L.P., Omaha, J. Brett Busby and David T. McDowell, of Bracewell & Giuliani, L.L.P., and Lisa Tate for amicus curiae American Council of Life Insurers.
Timothy R. Engler, of Harding & Shultz, P.C., L.L.O., Lincoln, and, of Counsel, Charles T. Richardson and Scott D. Himsel, of Baker & Daniels, L.L.P., Indianapolis, IN, and William P. O'Sullivan for amicus curiae National Organization of Life and Health Insurance Guaranty Associations.
HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.
GERRARD, J.
Future First Financial Group, Inc. (Future First), was a broker of viatical settlements. Viatical settlements are the sale or assignment of either the death benefit or ownership or any portion of the insurance policy or certificate of insurance.[1] Each of the named plaintiffs-appellants (hereinafter plaintiffs) invested in viatical settlements from Future First by entering into purchase request agreements (PRA's). Although the PRA's required plaintiffs to be named as life insurance policy beneficiaries, Future First failed to do so. The Florida Department of Insurance revoked Future First's viatical settlement provider license, and Future First was placed into judicial conservatorship.
Plaintiffs filed this declaratory judgment action seeking a declaration of the rights of the parties regarding liability arising from the PRA's. The question presented is whether, under the Nebraska Life and Health Insurance Guaranty Association Act (the Act),[2] Future First is a "member insurer."[3] We conclude that because Future First was not licensed by the Nebraska Department of Insurance, the Nebraska Life and Health Insurance Guaranty Association (Guaranty Association) is not obligated to guarantee the PRA's.

FACTS
The defendant-appellee, Guaranty Association, is a nonprofit unincorporated association of insurance companies created by the Act to provide protection to Nebraska residents who own or are beneficiaries of statutorily covered life insurance, health insurance, or annuity contracts. Generally, as limited by the Act, the Guaranty Association guarantees payment of benefits and continuation of coverage when an insurer becomes insolvent.[4] Future First was a Florida corporation which has never been licensed by the Nebraska Department of Insurance to conduct business in Nebraska and has never paid dues or assessments to the Guaranty Association.
Future First was engaged in the business of providing or brokering viatical settlements. The parties define a viatical settlement as "a commercial transaction in which a terminally ill person insured by an existing life insurance policy sells the policy at a discount from its face value based upon the insured's life expectancy." Nebraska law defines a viatical settlement contract as the sale or assignment of either "the death benefit or ownership or *209 any portion of the insurance policy or certificate of insurance."[5]
Plaintiffs, all of whom are Nebraska residents, each entered into contracts to invest in viatical settlements by executing PRA's with Future First. Plaintiffs executed PRA's in favor of Future First specifying the rate of return they desired for their investment based on the duration of the "program" they chose. The PRA's advised plaintiffs that "life expectancy may vary, and there is no guarantee that the insurance policy purchased will pay a death benefit" to the purchaser within the time period selected by the purchaser. (Emphasis omitted.) Fidelity Viatical Trust was named as the owner of the life insurance policies in the PRA's.
The PRA's also stated that plaintiffs "must be named as either an absolute, irrevocable, non-transferable or direct beneficiary." With the exception of a list of names set forth in the stipulated record, however, no plaintiffs were contractually designated as the beneficiaries of any life insurance policy purchased by Future First.
Future First eventually "collapsed due to a combination of fraud, new medical developments and [policy sellers'] not dying according to the expected schedule."[6] The Florida Department of Insurance revoked Future First's viatical settlement provider license, and Future First was placed into judicial conservatorship.
Plaintiffs filed a declaratory judgment action seeking a declaration of the rights and duties of the parties under the PRA's. Both sides filed motions for partial summary judgment on the issue of liability only. The district court initially granted plaintiffs' motion for partial summary judgment on the issue of liability and overruled the Guaranty Association's motion for partial summary judgment. The court initially found that Future First was a "member insurer" for purposes of the Act and that the PRA's were "supplemental contracts" under § 44-2703(2)(a), effectively ordering the Guaranty Association to provide coverage to plaintiffs for their investment losses.
The Guaranty Association filed a motion to reconsider the partial summary judgment ruling, and the district court vacated its previous ruling. Although the court declined to alter its ruling that Future First was a "member insurer" and that the PRA's were "supplemental contracts" for purposes of the Act, the court held that the exclusion in § 44-2703(2)(b)(i) precludes coverage of plaintiffs' claims. That section states that the Act does not apply to "[a]ny portion of any policy or contract not guaranteed by the insurer or under which the risk is borne by the policy or contract holder."[7] The court concluded that the PRA's require plaintiffs to bear risks and that therefore, the PRA's are excluded from the Act's coverage. Plaintiffs appeal, and the Guaranty Association cross-appeals.

ASSIGNMENTS OF ERROR
Plaintiffs assign that the district court erred in (1) deciding that the contracts and transactions were exempt from coverage by § 44-2703(2)(b)(i), (2) granting the Guaranty Association's motion for summary judgment, and (3) reconsidering and reversing the result which had previously granted plaintiffs' motion for partial summary judgment.
On cross-appeal, the Guaranty Association assigns that the district court erred in *210 holding that (1) Future First is a "member insurer" for purposes of the Act and (2) the PRA's are "supplemental contracts" for purposes of the Act.

STANDARD OF REVIEW
Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[8] In reviewing summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, giving that party the benefit of all reasonable inferences deducible from the evidence.[9]
The meaning of a statute is a question of law.[10] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[11]

ANALYSIS
We first address an issue raised by the Guaranty Association's cross-appeal, as our resolution of the issue is dispositive of this appeal. On cross-appeal, the Guaranty Association contends that Future First is not a "member insurer" for the purposes of the Act. Therefore, the Guaranty Association argues, it has no obligation to guarantee the PRA's issued by Future First. The Guaranty Association asserts that the Act requires the association to protect only insurance products issued by "member insurers" and that treating Future First as a "member insurer" is inconsistent with the underlying purpose of the Act.
The stated purpose of the Act is to protect resident policy owners and insureds against failure of an insolvent or financially impaired insurer to perform its contractual obligations and to assist in the detection and prevention of insurer insolvencies.[12] In order to provide this protection, the Act creates an association of insurers, the Guaranty Association, that enables the guarantee of payment of benefits and continuation of coverages, as limited in the Act.[13] When a "member insurer" becomes insolvent, the Guaranty Association's duty is to "[g]uarantee, assume, or reinsure, or cause to be guaranteed, assumed, or reinsured, all the covered policies of the impaired [or insolvent] insurer."[14] The funds required to carry out the powers and duties of the association are obtained by assessments levied against member insurers.[15] Essentially, the Guaranty Association pays or guarantees the insurance benefits that the insolvent member insurer is no longer able to pay, up to the statutory coverage limits.
In order to transact insurance business in Nebraska, a foreign insurance company must obtain a certificate of authority from *211 the Nebraska Department of Insurance.[16] Insurers become members of the Guaranty Association as a condition of their authority to transact business in Nebraska, and the Guaranty Association operates under the direct supervision of the Nebraska Director of Insurance.[17] The Act defines "member insurer" as "any person authorized to transact in this state any kind of insurance provided for under section 44-2703."[18] The insurance provided for under that section generally includes direct nongroup life, health, or annuity policies or contracts and supplemental contracts to any of those policies. But the Act specifically states that it shall not apply to "any [such] policy or contract issued by any person, corporation, or organization which is not licensed by the Department of Insurance under Chapter 44" of the Nebraska Revised Statutes.[19]
Here, the parties stipulated that Future First is not authorized and has never possessed a certificate of authority from the Nebraska Department of Insurance authorizing it to transact business in Nebraska. Although Future First was licensed by the Florida Department of Insurance as a viatical settlement provider, Future First was not authorized to transact insurance business in Nebraska. Therefore, Future First was not a member insurer under the Act and the viatical settlements it sold are specifically excluded from coverage under the Act, because they were issued by a business that was not licensed by the Nebraska Department of Insurance under chapter 44.
When asked to interpret a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[20] To determine the legislative intent of a statute, a court generally considers the subject matter of the whole act, as well as the particular topic of the statute containing the questioned language.[21] Plaintiffs admit that Future First was never a member of the Guaranty Association and never paid dues or assessments to the association. In light of the fact that Future First was never a member insurer, Future First investors may not benefit from a system designed to guarantee a continuation of coverage of member insurers. Based on the undisputed evidence, we conclude as a matter of law that Future First is not a "member insurer" as defined by the Act, and because it was not authorized to transact business in Nebraska, the PRA's are specifically excluded from the Act. Therefore, the Guaranty Association has no obligation to guarantee the PRA's.
Plaintiffs argue that Future First is a member insurer because viatical settlements are "supplemental contracts" for the distribution of policy or contract proceeds,[22] and according to plaintiffs, Future First was able to legally sell viatical settlements in Nebraska by virtue of being licensed to do so in Florida. But that, even if true, is beside the point. The issue in this case is not whether Future First's sale of the PRA's was "legal." The issue is whether the PRA's are guaranteed by the Act. The Act, as explained above, does *212 not operate to generally guarantee every product that can legally be sold in Nebraska. Instead, it is intended to guarantee insurance products that are sold to Nebraska residents by insurers that are authorized to do business here and therefore are member insurers of the Guaranty Association. Future First was not, and its PRA's are not covered by the Act.
Our conclusion that Future First is not a "member insurer" under the Act is dispositive of this appeal, and therefore, we need not address the Guaranty Association's remaining assignments of error on cross-appeal or plaintiffs' assignments of error.

CONCLUSION
We conclude that the district court erred in concluding that Future First was a "member insurer" under the Act. But where the record adequately demonstrates that the decision of the trial court is correct, although such correctness is based on a ground or reason different from that assigned by the trial court, an appellate court will affirm.[23] Based on the foregoing reasons, we affirm the district court's order granting the Guaranty Association's motion for summary judgment.
Affirmed.
MILLER-LERMAN, J., participating on briefs.
WRIGHT, J., not participating.
NOTES
[1] Neb.Rev.Stat. § 44-1102(14) (Reissue 2004).
[2] Neb.Rev.Stat. §§ 44-2701 to 44-2720 (Reissue 2004).
[3] See § 44-2702(8).
[4] See § 44-2701.
[5] § 44-1102(14).
[6] Brief for appellants at 11.
[7] § 44-2703(2)(b)(i).
[8] Thone v. Regional West Med. Ctr., 275 Neb. 238, 745 N.W.2d 898 (2008).
[9] Amanda C. v. Case, 275 Neb. 757, 749 N.W.2d 429 (2008).
[10] Ahmann v. Correctional Ctr. Lincoln, 276 Neb. 590, 755 N.W.2d 608 (2008).
[11] Steffen v. Progressive Northern Ins. Co., 276 Neb. 378, 754 N.W.2d 730 (2008).
[12] § 44-2701; Nebraska Life & Health Ins. Guar. Assn. v. Dobias, 247 Neb. 900, 531 N.W.2d 217 (1995).
[13] § 44-2701(1).
[14] § 44-2707(1)(a). Accord § 44-2707(2)(a).
[15] § 44-2708.
[16] Neb.Rev.Stat. § 44-135 (Reissue 2004).
[17] § 44-2705.
[18] § 44-2702(8).
[19] § 44-2703(2)(b)(xiii).
[20] Unisys Corp. v. Nebraska Life & Health Ins. Guar. Assn., 267 Neb. 158, 673 N.W.2d 15 (2004).
[21] Id.
[22] See § 44-2702(15).
[23] In re Estate of Lamplaugh, 270 Neb. 941, 708 N.W.2d 645 (2006).