18 Neb.App. 31
VASILE HURBENCA, APPELLANT,
v.
NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES ET AL., APPELLEES.
No. A-08-1149.
Court of Appeals of Nebraska.
Filed September 22, 2009.
Vasile Hurbenca, pro se.
Jon Bruning, Attorney General, and Ryan C. Gilbride for appellees.
IRWIN, SIEVERS, and CASSEL, Judges.
CASSEL, Judge.

INTRODUCTION
In granting a summary judgment in favor of the appellees, the district court rejected the claim of Vasile Hurbenca, an inmate, that he was wrongfully denied direct access to funds he earned as an inmate. Because Nebraska law does not require that the appellees provide Hurbenca with an 8-hour workday as a prerequisite to enforcement of the prison's regulations regarding earnings, we affirm. See Neb. Rev. Stat. §§ 83-183 and 83-183.01 (Reissue 2008).

BACKGROUND
On December 6, 2007, Hurbenca filed a complaint for declaratory relief in which he alleged that the appellees, the Nebraska Department of Correctional Services (the Department) and various individuals it employed  Robert P. Houston, Frank X. Hopkins, Fred Britten, Kim Beethe, and Matthew Harris  caused the wrongful withholding of Hurbenca's wages earned during his confinement while employed by two private businesses. Hurbenca stated that he had been employed by these entities from 1995 to 2001. Hurbenca alleged that §§ 83-183 and 83-183.01 prohibited the Department from withholding any amount from an inmate's wages unless the inmate was employed 8 hours a day, but that he had never worked 8 hours a day. Hurbenca further alleged that in 2007, he was wrongfully denied access to funds that were withheld and placed in a "`Private Venture Savings Account,'" which he was informed could be used only for family support.
On October 20, 2008, the district court heard the appellees' motion for summary judgment. The appellees offered into evidence an inmate work contract "for direct employment by a private venture," signed by Hurbenca in 2000. The work contract stated as follows:
I also agree to the following:
1. Deductions will be held from my gross monthly wages to be distributed in accordance with [§] 83-183.01. . . as follows:
a. Payroll deductions as required by law, which may include, but are not limited to, state and federal income taxes and social security assessments.
b. Cost for room and board at $1.50 per hour worked, to the nearest one-quarter hour.
c. Required savings to be obtained by me upon release or parole and/or family support distributions as authorized by me.
d. Contributions to the Victim's Compensation Fund at five percent . . . of gross wages.
Further, the appellees introduced into evidence an affidavit from the Department's controller, Inga L. Hookstra, who is responsible for inmate accounting. Hookstra's affidavit stated that in consideration for employment with a private venture operation, Hurbenca had agreed to have a portion of his wages withheld and placed in a "Private Venture savings account," as opposed to an inmate institutional account. Hookstra's affidavit also stated that the Department's regulations provided for funds from a private venture savings account to be sent to immediate family members, but not to an inmate institutional account, as Hurbenca had requested. Hookstra's affidavit averred that Hurbenca would receive the funds from his private venture savings account upon his release from prison or when he received parole. The appellees also offered into evidence inmate accounting regulations, which show that the account in which Hurbenca could deposit his earnings from his job, a private venture savings account, permitted only "[t]wo withdrawals per calendar month . . . to send funds for family support" and did not permit withdrawals for any other purpose. Hurbenca's evidence consisted of a statement of his private venture savings account and a statement of his release savings account.
On October 27, 2008, the court granted the appellees' motion for summary judgment. The district court found that § 83-183 "does not mandate an eight hour work day before statutory [wage] deductions are allowed" and that the Department had not violated Hurbenca's statutory rights regarding wage withholding.
Hurbenca timely appeals. Pursuant to authority granted to this court under Neb. Ct. R. App. P. § 2-111(B)(1), this case was ordered submitted without oral argument.

ASSIGNMENTS OF ERROR
Hurbenca alleges, as reordered and restated, that the district court erred in (1) making its findings of fact, (2) determining that the appellees have not violated his statutory rights regarding wage withholding, (3) finding that § 83-183 does not impose an 8-hour-workday requirement before statutory deductions may be taken from an inmate's pay, (4) granting the appellees' motion for summary judgment, and (5) applying the language of Neb. Rev. Stat. § 81-1826 (Reissue 2008) to the issue of wage withholding.
[1] Hurbenca also argues but does not assign as error that the court failed to correctly apply Neb. Rev. Stat. § 25-1333 (Reissue 2008), which specifies certain findings that the court is to make where summary judgment is not rendered upon the whole case, or for all the relief requested, and a trial is necessary. Errors argued but not assigned will not be considered on appeal. Vokal v. Nebraska Acct. & Disclosure Comm., 276 Neb. 988, 759 N.W.2d 75 (2009). We do not address this matter.

STANDARD OF REVIEW
[2, 3] Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Jardine v. McVey, 276 Neb. 1023, 759 N.W.2d 690 (2009). In reviewing a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment was granted, and we give that party the benefit of all reasonable inferences deducible from the evidence. Id.
[4] Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court. Metropolitan Comm. College Area v. City of Omaha, 277 Neb. 782, 765 N.W.2d 440 (2009).

ANALYSIS
Before turning to the primary question of statutory interpretation posed by this appeal, we first dispose of an assignment of error requiring little discussion.

District Court's Findings of Fact.
Hurbenca assigns that the district court erred in making its findings of fact. Because we review the record itself and not the district court's factual findings in reviewing a motion for summary judgment, see Jardine v. McVey, supra, we need not address this assignment of error.

§§ 83-183 and 83-183.01.
Hurbenca's primary argument is that he cannot be subjected to regulations implemented by the Department which prohibit him from withdrawing his funds for personal use.
Section 83-183.01 sets forth the persons subject to the Department's regulations, sets forth reasons for which deductions may be taken, and provides as follows in this regard:
A person committed to the department, who is earning at least minimum wage and is employed pursuant to sections 81-1827 and 83-183, shall have his or her wages set aside by the chief executive officer of the facility in a separate wage fund. The director shall adopt and promulgate rules and regulations which will protect the inmate's rights to due process, provide for hearing as necessary before the Crime Victim's Reparations Committee, and govern the disposition of a confined person's gross monthly wage minus required payroll deductions and payment of necessary work-related incidental expenses for the following purposes:
(1) For the support of families and dependent relatives of the respective inmates;
(2) For the discharge of any legal obligations, including judgments for restitution;
(3) To pay all or a part of the cost of their board, room, clothing, medical, dental, and other correctional services;
(4) To provide for funds payable to the person committed to the department upon his or her release;
(5) For the actual value of state property intentionally or willfully and wantonly destroyed by such person during his or her commitment;
(6) For reasonable costs incurred in returning such person to the facility to which he or she is committed in the event of escape; and
(7) For deposit in the Victim's Compensation Fund.
This section contains no requirement that the Department make such funds available for the personal spending of an incarcerated person during the term of incarceration. Conversely, where this section does not apply, wages are set aside "in a separate fund" which "shall enable such person committed to the department to . . . make necessary purchases from the commissary," among other things. § 83-183(3). Section 83-183.01 contains no such requirement. Thus, if Hurbenca earned at least minimum wage and was employed pursuant to § 83-183 and Neb. Rev. Stat. § 81-1827 (Reissue 2008), the Department could enforce regulations restricting Hurbenca's access to the money he earned.
Hurbenca argues only that the Department's regulations, which restricted his access to his private venture earnings, do not apply, because he was not employed pursuant to § 83-183. Hurbenca insists that § 83-183 requires that the Department provide him with 8 hours of work per day, which he did not receive. Although there is no evidence in the record as to whether Hurbenca worked an 8-hour day, for purposes of our analysis, we will assume that he did not do so.
In pertinent part, § 83-183 provides:
(1) To establish good habits of work and responsibility, to foster vocational training, and to reduce the cost of operating the facilities, persons committed to the department shall be employed, eight hours per day, so far as possible in constructive and diversified activities in the production of goods, services, and foodstuffs to maintain the facilities, for state use, and for other purposes authorized by law.
Hurbenca argues that the phrase "so far as possible" modifies only the activities listed afterward, and not the phrase "eight hours per day," and thus, that the "eight hours" language is mandatory. If we analyzed this particular subsection on its own, Hurbenca's assertion may have some merit because the phrase "so far as possible" was in the statute prior to when the language regarding 8 hours was added. The original version of the statute was materially identical to the portion quoted, except that the phrase "eight hours per day" was not in the original statute. See 1969 Neb. Laws, ch. 817, § 14, p. 3080. Thus, it is not apparent from the quoted language whether, in adding the "eight hours" language, the Legislature intended to also have it be modified by the phrase "so far as possible."
[5] However, when we conjunctively consider and construe the provisions of the legislative act that first adopted the "eight hours" language, it is clear that the Legislature did not intend to mandate that the Department provide prisoners with 8 hours per day of employment. The components of a series or collection of statutes pertaining to a certain subject matter which are in pari materia may be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions of the act are consistent, harmonious, and sensible. Steffen v. Progressive Northern Ins. Co., 276 Neb. 378, 754 N.W.2d 730 (2008). The Legislature first added the "eight hours per day" language in 1980 Neb. Laws, L.B. 319, from which we note two important points.
First, the Legislature did not revise § 83-183(2) which, at that time, provided that "[t]he Director of Correctional Services shall make rules and regulations governing the hours, conditions of labor, and the rates of compensation of persons committed to the department." See 1980 Neb. Laws, L.B. 319. At present, the director still has such authority. See § 83-183(2). Because the Legislature left intact the director's ability to regulate the "hours," it would be inconsistent to read the "eight hours" language as specifically mandating 8 hours per day.
Second, in L.B. 319, the Legislature added language to other sections regarding an 8-hour workday, but imposed no requirement that the Department provide an 8-hour workday. For example, § 3 of the legislative act revised Neb. Rev. Stat. § 81-1826 (Cum. Supp. 1978) as follows, in pertinent part: "The Department of Correctional Services shall, as far as possible, provide for the employment, eight hours per day, of confined persons by private businesses . . . ." (Underscored words represent language added by L.B. 319.) The plain language of this revision indicates that the Department was to provide inmates with full-time employment to the greatest extent possible  not that they had to be provided with full-time work. It would be incongruous to hold that the addition of the "eight hours" language to § 83-183(1) was intended to establish a mandate where another section of the same legislative act clearly stated that such employment was to be provided "as far as possible." It would be even more strained to do so where the sentence of § 83-183(1) amended by the act already included the similar words "so far as possible."
In addition, § 5 of L.B. 319, which revised Neb. Rev. Stat. § 81-1829 (Cum. Supp. 1978) to its current form, stated that "[t]he Department of Correctional Services shall may establish and maintain farms to provide food for the institutions under the jurisdiction of the department and also to provide opportunity for all inmates to work eight hours per day." (Strikeouts and underscoring delineate language respectively deleted and added by the act.) In this section, the language about providing the inmates with 8 hours of work per day is stated as a purpose of the provision of farming opportunities  not as a requirement. The fact that the Legislature left control of the hours which the inmates worked to the Department's director, along with the fact that the other portions of L.B. 319 which referred to 8 hours of work did not make it mandatory, leads us to the conclusion that § 83-183 does not require that an inmate work 8 hours a day. Thus, in the context of § 83-183, the "eight hours" language does not serve to preempt the Department from enforcing its regulations where the inmate failed to work 8 hours per day.
In the interest of completeness, we also examine the Legislative history of L.B. 319. The legislative record provides no specific indication of what was intended by the "eight hours per day" language. However, the entirety of the legislative history shows that in passing this bill, the Legislature had two overarching concerns: (1) that inmates have the opportunity to participate in productive work for purposes of rehabilitation and (2) that inmates not be unfairly disadvantaged. A recommended 8-hour workday balances these concerns. However, a rigid rule requiring inmates to work an 8-hour workday could be unfair in light of these concerns. First, not all inmates may be capable of working 8 hours. Second, if work opportunities were scarce and an 8-hour workday was deemed mandatory, the Department would not have the option of spreading the available work among the inmate population to equitably provide at least some opportunity to as many inmates as possible. Under this rigid, mandatory interpretation, the Department could not accomplish the Legislature's intended goal of providing all inmates with the opportunity to work for rehabilitative purposes.
[6] We hold that §§ 83-183 and 83-183.01 do not require that an inmate be provided with an 8-hour workday as a prerequisite to enforcement of the Department's regulations regarding earnings. We need not address whether the "eight hours" language imposes any requirement on the Department to make efforts to ensure that all inmates have the opportunity to work 8 hours per day. Because Hurbenca adduced no evidence that the Department could have provided but did not provide him the opportunity to work 8 hours a day, there is no remaining question of fact as to whether the requirements of § 83-183 were fulfilled.
Finally, there is no factual dispute as to the effect of the regulations promulgated pursuant to the Department's authority under § 83-183.01. The Department promulgated regulations pursuant to its authority under § 83-183.01, and the regulations restricted Hurbenca's access to his private venture savings account. Hookstra's affidavit averred that this was the case and that the regulations which governed Hurbenca's private venture savings account permitted withdrawals during imprisonment only for the purpose of providing family support. Hurbenca did not adduce any evidence to the contrary. Because Hurbenca asserted only that the regulations conflicted with §§ 83-183 and 83-183.01 and did not otherwise challenge the Department's regulations, no further discussion is necessary.

§ 81-1826.
Finally, we dispose of Hurbenca's assignment that the district court erred in applying § 81-1826 (Reissue 2008) to the issue of wage withholding. Although § 81-1826 does not directly control the issue, it is in pari materia with the other statutes governing the employment of incarcerated persons and was amended by the same legislative act that added the "eight hours" language to § 83-183(1). Therefore, § 81-1826 may be used as we have done  to help discern the meaning of the other related statutes governing the same subject matter. See Steffen v. Progressive Northern Ins. Co., 276 Neb. 378, 754 N.W.2d 730 (2008). It appears that this is what the district court did, and it did not err in so doing.

CONCLUSION
Because §§ 83-183 and 83-183.01 do not impose an 8-hour workday as a prerequisite to the applicability of the Department's regulations governing the allocation of an inmate's private venture earnings, the Department's regulations restricting Hurbenca's access to his private venture earnings were not thereby inconsistent with statutory law. Because there was no genuine issue of material fact that the regulations prohibited Hurbenca from transferring such funds deposited in a private venture savings account into his inmate institutional account, we affirm the district court's judgment.
AFFIRMED.