JENNY A. SNECKENBERG, APPELLEE, V.
PATRICK R. SNECKENBERG, APPELLANT, AND
STATE OF NEBRASKA, INTERVENOR-APPELLEE.
616 N.W. 2d 68

Filed August 15, 2000.    No. A-99-936.

Lawrence G. Whelan for appellant.

W. Randall Paragas, of Paragas Law Offices, for appellee.

Anthony R. Medina for intervenor-appellee.

Irwin, Chief Judge, and Sievers and Carlson, Judges.

Carlson, Judge.

## I. INTRODUCTION

Patrick R. Sneckenberg appeals from an order of the district court modifying his child support obligations under a dissolution decree and also from an award of attorney fees. For the reasons set forth below, we affirm as modified.

## II. BACKGROUND

Jenny A. Sneckenberg, now known as Jenny A. McCarthy, and Patrick were married on April 12, 1975, and divorced on July 24, 1991. In that decree of dissolution, Jenny was awarded custody of the parties' four minor children. Patrick was ordered to pay child support in the amount of $447 for four children, $397 for three children, $317 for two children, and $204 for one child. The record does not contain the calculations upon which this figure was based. The decree further provided that Patrick should pay one-half the cost of medical insurance coverage attributable to the minor children, such cost at the time of the decree was set at $58.82 per month.

On July 16, 1998, the State of Nebraska, as intervenor pursuant to Neb. Rev. Stat. § 43-512.08 et seq. (Reissue 1998), filed a petition for modification, seeking to adjust the existing child support order to bring it into conformance with the Nebraska Child Support Guidelines. Specifically, the application alleged that Patrick's child support obligation varied from the child sup-

port guidelines by more than 10 percent and that such variation was due to financial circumstances which had lasted for at least 3 months and could reasonably be expected to last for an additional 6 months.

On March 17, 1999, Jenny and Patrick appeared before the district court on a separate issue, that being whether Patrick was obligated to pay past-due insurance premium payments pursuant to the original decree. The pleadings in that action are not in the record before this court. From the context of the testimony, it appears that the matter was brought in the form of a show cause hearing. In any event, the matter was continued "to a date to be determined."

On June 8, 1999, a hearing was held at which the issues of past-due insurance premium payments and child support modification were addressed. On July 13, the district court found that "it appears that there has been an increase of more than 10% in the income of [Patrick] and therefore an increase in child support is in order." The court accordingly held that Patrick should pay child support in the amount of $613 for two children and $419 for one child, effective January 1, 1999. It is uncontroverted that two children had reached the age of majority by the time of the hearing in this matter.

The court further ordered Patrick to reimburse Jenny for past-due health insurance premium payments in the amount of $4,222.44. Finally, the court ordered Patrick to pay Jenny's attorney fees in the amount of $450.

### III. ASSIGNMENTS OF ERROR

Patrick makes four assignments of error as follows: The trial court erred in (1) finding that a material change of circumstances had occurred which warranted modification of the dissolution decree, (2) failing to properly calculate the amount of child support due from Patrick, (3) making a retroactive award of child support, and (4) awarding attorney fees to Jenny. Patrick did not appeal from that portion of the order directing him to reimburse Jenny for past-due insurance premium payments.

### IV. STANDARD OF REVIEW

The determination as to modification of a dissolution decree is a matter of discretion for the trial court, and its deci-

sion will be reviewed on appeal de novo on the record and will be reversed upon an abuse of discretion. See *Rauch v. Rauch*, 256 Neb. 257, 590 N.W.2d 170 (1999).

■ A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result. *Davidson v. Davidson*, 254 Neb. 357, 576 N.W.2d 779 (1998).

In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue, but where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Rauch v. Rauch, supra.*

■ A trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion. *Greenwalt v. Wal-Mart Stores*, 253 Neb. 32, 567 N.W.2d 560 (1997).

## V. ANALYSIS

### 1. MODIFICATION OF PATRICK'S CHILD SUPPORT OBLIGATION

Patrick first argues that the trial court erred in finding that an increase in his child support obligation was warranted. We hold, for the reasons set forth below, that the trial court properly found that an increase was appropriate, but further hold that the trial court erred in the amount of the increase.

### (a) Material Change of Circumstances

Existing child support orders are subject to review pursuant to §§ 43-512.12 through 43-512.18, where a party has applied for or is receiving services under title IV-D of the Social Security Act. Those statutes further provide a vehicle for the State to seek a modification of an existing support order to attain support from a parent. *State ex rel. Cammarata v. Chambers*, 6 Neb. App. 467, 574 N.W.2d 530 (1998). Specifically, § 43-512.12(1) provides that such review should occur where, inter alia,

> [t]he present child support obligation varies from the Supreme Court child support guidelines . . . by more than the percentage, amount, or other criteria established by

Supreme Court rule, and the variation is due to financial circumstances which have lasted at least three months and can reasonably be expected to last for an additional six months.

Paragraph Q of the child support guidelines provides:

Application of the child support guidelines which would result in a variation by 10 percent or more . . . of the current child support obligation, due to financial circumstances which have lasted 3 months and can reasonably be expected to last for an additional 6 months, establishes a rebuttable presumption of a material change of circumstances.

Each party submitted child support worksheets, each of which contained different support calculations, but each of which results in a variation of more than 10 percent. In fact, Patrick concedes in his brief that he "does not dispute that the application of the child support guidelines would result in a 10% variation from his current child support obligation." Brief for appellant at 7. He argues, however, that the State has failed to show that this variation is a material change of circumstances that would warrant modification of his child support obligation. We disagree.

A party seeking to modify a child support order must show a material change in circumstances which has occurred subsequent to the entry of the original decree or a previous modification and was not contemplated when the decree was entered. *Rauch v. Rauch*, 256 Neb. 257, 590 N.W.2d 170 (1999). In the context of marital dissolutions, a material change of circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Id.*; *Sullivan v. Sullivan*, 249 Neb. 573, 544 N.W.2d 354 (1996). Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, and whether the change is temporary or permanent. *Rauch v. Rauch, supra*; *Swenson v. Swenson*, 254 Neb. 242, 575 N.W.2d 612 (1998).

The instant order is silent as to a material change of circumstances, and Patrick asserts that none has occurred. He concedes that the increase in his child support obligation exceeds 10 percent, but contends that "[i]t is apparent from the child support guideline language that there must be a ten percent variation which is due to the financial circumstances of the parties." Brief for appellant at 8. He then asserts that this increase in child support obligation was not due to an increase in his income or decrease in that of Jenny's, and concludes that, accordingly, no material change of circumstances has occurred. This argument has been considered and rejected by the Nebraska Supreme Court. See *Schmitt v. Schmitt*, 239 Neb. 632, 635-36, 477 N.W.2d 563, 565 (1991), where the noncustodial parent argued that adoption of the child support guidelines, being a change of law over which he had no control, should not be deemed a material change of circumstances:

> Appellant contends that the factors considered by the court in finding a change of circumstance are all "circumstances that the parties have some control over, unlike changes in the law." Reply brief for appellant at 11. In *Babka v. Babka*, 234 Neb. 674, 452 N.W.2d 286 (1990), however, we held that a change in federal tax law constituted a material change of circumstances which would justify modification of a support order. In *Babka*, the parties agreed that the noncustodial parent would claim the children as dependents on his income tax returns, but this agreement was not made a part of the decree when they divorced in 1980. In 1984, Congress amended the tax code to give the deductions automatically to the custodial parent, unless the custodial parent signed a written waiver. In 1987, the custodial parent in *Babka* claimed the children as deductions on her returns, although she had signed the waivers in 1985 and 1986. The court ordered the custodial parent to sign the waiver, finding that the change in the tax law and the mother's refusal to sign the waiver constituted a material change of circumstances justifying the modification.

The *Schmitt* court concluded that adoption of the child support guidelines constituted a material change of circumstances warranting a change in child support obligations, notwithstand-

ing that it resulted from a change of law, rather than from the actions of the parties.

We believe that that principle should be extended one step further and hold that an upward revision of the guidelines constitutes a material change of circumstances that can warrant upward modification of a parent's child support obligation, independent of changes in that parent's income. We accordingly affirm the district court's conclusion that a material change of circumstances had occurred warranting such modification.

### (b) Application of Child Support Guidelines

Patrick next argues that if such modification was warranted, the trial court nonetheless erred in its application of those guidelines. We agree, finding that the trial court adopted the wrong child support worksheet.

Each party submitted a child support obligation worksheet, each of which resulted in a different figure for Patrick's child support obligation. Although the trial court does not specify which it adopted, its figures are nearly identical to those set out in Jenny's worksheet. In that worksheet, she proposed dividing Patrick's income as of May 9, 1999 (which she represents as being $10,451.31) by 4.3 (apparently the number of months elapsed), arriving at a monthly income of $2,430, which, if multiplied by 12, constitutes a gross annual income of $29,160.

We believe Jenny's calculations are wrong in the following respects: First, careful reading of exhibit 4 shows that Patrick's gross income as of May 9, 1999, was $10,051.31, some $400 lower than the figure used by Jenny. Second, because Patrick was paid biweekly, it would be more appropriate to divide his gross income as of May 9, 1999, by 10, which represents the number of 2-week pay periods included therein, and to multiply that figure ($1,005) by the 26 pay periods in a year, resulting in an annual income of $26,130. See paragraph D of the child support guidelines ("[i]f the person is paid $200 every 2 weeks, his or her annualized gross income would be $5,200 ($200 times 26 weeks) and monthly income would be $433.33 (5,200 divided by 12)"). When Patrick's annualized gross income is divided by 12, the result is a gross monthly income of $2,177, which is the figure proposed by Patrick in his worksheet. Accordingly, upon

our de novo review of the record, we conclude that the trial court should have adopted the worksheet prepared by Patrick and should have ordered Patrick to pay the amounts contained therein, i.e., $516.52 for two children and $353.53 for one child. We modify accordingly.

### (c) Retroactive Modification

Patrick next argues that the trial court abused its discretion in ordering that his modified child support obligations become effective on January 1, 1999, some 6 months after the State had filed its petition and some 7 months before the entry of the order. We disagree.

The general rule in Nebraska has been to allow a modification of a child support order prospectively from the time of the modification order itself. *Wulff v. Wulff*, 243 Neb. 616, 500 N.W.2d 845 (1993); *Maddux v. Maddux*, 239 Neb. 239, 475 N.W.2d 524 (1991). However, upon occasion, depending on the equities involved, the Supreme Court has approved modification of a child support order retroactive to the filing date of the application for modification. *Wulff v. Wulff, supra.*

In the instant case, the district court opted to split the difference between the filing date and the date of the modification order. In its order, the district court explained:

> The Court . . . feels that there was some misunderstanding between [Jenny and Patrick] regarding whether or not [Patrick] purchased items for the use and benefit of the children, and whether or not he should be entitled to some reduction in support or should be forgiven the nonpayment of insurance premiums for that reason.

> Due to this misunderstanding . . . the Court feels that the child support payment as a foresaid [sic] should be retroactive to January 1, 1999.

We do not see that the district court abused its discretion in setting the starting date for the modified child support payments on the date that it did. This assignment of error is accordingly rejected.

### 2. ATTORNEY FEES AWARDED TO JENNY

Patrick also assigns as error that portion of the trial court's order directing him to pay Jenny's attorney fees in the amount

of $450. He suggests that Jenny was not a prevailing party and therefore not entitled to attorney fees. We disagree. Although the record below is somewhat murky, it is clear from the context of the hearing and the testimony and exhibits therein, and also by the order ultimately entered by the court, that the matter was heard on both the State's motion for modification, as intervenor, and Jenny's original efforts to have Patrick pay for past-due insurance premium payments. In exhibit 7, Jenny asserted she was owed $4,338.24 for those premium payments; the court awarded her $4,222.44.

Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Ryan v. Ryan*, 257 Neb. 682, 600 N.W.2d 739 (1999). Customarily, attorney fees and costs are awarded only to prevailing parties. *Id.* It cannot be rationally argued that Jenny was not a prevailing party when, following the hearing, Patrick was ordered to pay her $4,222.44 in past-due premium payments, which is nearly the full amount she requested.

A trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion. *Greenwalt v. Wal-Mart Stores*, 253 Neb. 32, 567 N.W.2d 560 (1997). We cannot say that the trial court abused its discretion in awarding attorney fees to Jenny.

## VI. CONCLUSION

For the reasons set forth above, the order by the district court is affirmed as modified.

AFFIRMED AS MODIFIED.