775 N.W.2d 462 (2009)
18 Neb. App. 116
Shannon I. HOPKINS, formerly known as Shannon I. Stauffer, appellee,
v.
Shane Alan STAUFFER, appellant.
No. A-09-266.
Court of Appeals of Nebraska.
November 10, 2009.
*463 Shane Alan Stauffer, pro se.
No appearance for appellee.
SIEVERS, CARLSON, and CASSEL, Judges.
CASSEL, Judge.

INTRODUCTION
Since at least 1985, Nebraska appellate courts have held that incarceration does not constitute a material change in circumstances justifying a reduction in or termination of child support obligations. See Ohler v. Ohler, 220 Neb. 272, 369 N.W.2d 615 (1985). This appeal addresses the continued vitality of that rule in light of recent amendments by the Legislature to Neb. Rev.Stat. § 43-512.15 (Reissue 2008). Because we conclude that the Legislature *464 intended its amendments to allow incarcerated individuals to obtain a reduction in child support under certain conditions, we reverse, and remand for further proceedings.

BACKGROUND
In March 1995, Shannon I. Hopkins, formerly known as Shannon I. Stauffer, filed a petition to dissolve her marriage to Shane Alan Stauffer. The court granted Hopkins temporary custody of the parties' three minor children and ordered Stauffer to pay temporary child support of $648 per month. In December, while the dissolution action was pending, Stauffer was charged with the attempted first degree murder of Hopkins. A decree filed in February 1996 dissolved the parties' marriage and ordered Stauffer to pay monthly child support of $648. At that time, Stauffer was in jail awaiting trial on the criminal charge. Stauffer was subsequently convicted of attempted first degree murder and was sentenced to 20 to 40 years' imprisonment. His mandatory release date is in 2015.
In 1997, Stauffer filed an application to modify his child support obligation, alleging that he lacked the financial ability to meet his obligation because he earned $56.11 a month. The district court dismissed Stauffer's petition for lack of evidence, and we affirmed. See Stauffer v. Stauffer, 8 Neb.App. xiii (No. A-97-647, Feb. 9, 1999).
In 2001, Stauffer filed another petition to modify his child support obligation. The district court determined that the petition was barred by the doctrine of res judicata, and we reversed, and remanded for further proceedings. See Stauffer v. Stauffer, No. A-02-1033, 2004 WL 1316013 (Neb.App. June 15, 2004) (not designated for permanent publication). Upon remand, the district court held a hearing and then denied Stauffer's petition. This court affirmed, relying on Ohler v. Ohler, supra, and State on behalf of Longnecker v. Longnecker, 11 Neb.App. 773, 660 N.W.2d 544 (2003). Stauffer v. Stauffer, No. A-04-1432, 2005 WL 2495420 (Neb.App. Oct. 11, 2005) (not designated for permanent publication).
On September 16, 2008, Stauffer filed the instant complaint to modify child support. He stated that he was bringing the action pursuant to Neb.Rev.Stat. § 42-364(9) (Reissue 2004) and that he was entitled to modification under § 43-512.15 because his reduction in income should be deemed involuntary due to his incarceration.
During the hearing on Stauffer's complaint, Stauffer testified that he was not incarcerated for a crime related to Neb. Rev.Stat. § 28-706 (Reissue 2008), that he had been and will be incarcerated for more than 1 year, and that he had no past of willfully failing to provide support. When the court asked Hopkins whether Stauffer had been behind in child support, she answered, "Well, yes he has. It's been garnished, but the amount is pretty much usually there." Hopkins testified that she has received $644 a month in child support for the past 8 years. During the 5 years leading up to 2000, she received no child support; but since 2000, she has received nearly the entire amount of the $648 ordered.
The district court denied Stauffer's complaint. The court recognized that Stauffer's circumstances had not changed since this court's decision in 2005. The district court found Stauffer's contention that the amendment to § 43-512.15 superseded Ohler v. Ohler, 220 Neb. 272, 369 N.W.2d 615 (1985), and State v. Porter, 259 Neb. 366, 610 N.W.2d 23 (2000), to be without merit. The court stated that the statutory change did "nothing more than require the *465 authorized attorney, when exercising her or his discretion, to exclude incarceration for more than one year from the circumstances which constitute a voluntary reduction of income" and that it "does not constitute a material change in circumstances and ... does not constitute a sufficient basis, by itself, to support a reduction in child support."
Stauffer timely appeals. No brief has been filed in response to Stauffer's brief. Pursuant to authority granted to this court under Neb. Ct. R. App. P. § 2-111(B)(1) (rev.2008), this case was ordered submitted without oral argument.

ASSIGNMENTS OF ERROR
Stauffer alleges that the district court abused its discretion in determining (1) that a material change of circumstances had not occurred and (2) that new statutory law did not supersede old case law.

STANDARD OF REVIEW
Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. Metcalf v. Metcalf, 278 Neb. 258, 769 N.W.2d 386 (2009).
Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court. Metropolitan Comm. College Area v. City of Omaha, 277 Neb. 782, 765 N.W.2d 440 (2009).

ANALYSIS

Interpretation of § 43-512.15.
This appeal centers on the effect of recent amendments to § 43-512.15 on an incarcerated parent's ability to obtain a reduction in his or her child support obligation. In 2007, the Legislature added the following underscored language to § 43-512.15(1)(b):
The variation from the guidelines is due to a voluntary reduction in net monthly income. For purposes of this section, a person who has been incarcerated for a period of one year or more in a county or city jail or a federal or state correctional facility shall be considered to have an involuntary reduction of income unless (i) the incarceration is a result of a conviction for criminal nonsupport pursuant to section 28-706 or a conviction for a violation of any federal law or law of another state substantially similar to section 28-706 or (ii) the incarcerated individual has a documented record of willfully failing or neglecting to provide proper support which he or she knew or reasonably should have known he or she was legally obligated to provide when he or she had sufficient resources to provide such support[.]
2007 Neb. Laws, L.B. 554, § 42.
In construing a statute, appellate courts are guided by the presumption that the Legislature intended a sensible rather than absurd result in enacting the statute. Foster v. BryanLGH Med. Ctr. East, 272 Neb. 918, 725 N.W.2d 839 (2007). An appellate court will place a sensible construction upon a statute to effectuate the object of the legislation, as opposed to a literal meaning that would have the effect of defeating the legislative intent. Id. In construing a statute, a court must look to the statutory objective to be accomplished, the evils and mischiefs sought to be remedied, and the purpose to be served, and then must place on the statute a reasonable or liberal construction that best achieves the statute's purpose, rather than a construction that defeats the statutory purpose. Id.
*466 The first issue presented by this appeal is whether § 43-512.15 has any application to a complaint to modify support brought by an incarcerated person. The plain language of the text in § 43-512.15(1)(b) states, "For purposes of this section. ..." The sectionwhich is titled, "Title IV-D child support order; modification; when; procedures"provides that "[t]he county attorney or authorized attorney, upon referral from the Department of Health and Human Services, shall file a complaint to modify a child support order unless the attorney determines in the exercise of independent professional judgment that" one of a number of enumerated circumstances, including a voluntary reduction in income, is present. § 43-512.15(1). The statutes found in Neb.Rev.Stat. §§ 43-512.12 through 43-512.18 (Reissue 2008) provide a vehicle for the State to seek a modification of an existing support order to attain support from a parent. Sneckenberg v. Sneckenberg, 9 Neb.App. 609, 616 N.W.2d 68 (2000). Existing child support orders are subject to review under those statutes where a party has applied for or is receiving services under title IV-D of the Social Security Act. Sneckenberg, supra. Here, the complaint was brought by Stauffer, and there is no indication that title IV-D is implicated. We share the dissent's discomfort in applying § 43-512.15 to a modification action brought by an inmate.
However, a determination that incarceration is still considered a voluntary reduction in income when a complaint to modify is brought by a prisoner would lead to absurd results. The district court concluded that the amendment to § 43-512.15 did not supersede Ohler v. Ohler, 220 Neb. 272, 369 N.W.2d 615 (1985), because the amendment merely required an authorized attorney to exclude incarceration for more than 1 year from the circumstances which constitute a voluntary reduction of income. If we were to accept the district court's reasoning, however, the language added by the Legislature would be hollow and we would be left with a result which defeats the purpose of the legislation: Even if an authorized attorney filed a complaint on a prisoner's behalf, the prisoner would be entitled to no relief under Ohler. The dissent does not address the tension between the statute and the absurd result that would follow if the amendment is deemed not to supersede Ohler.
Moreover, prior to the 2008 amendment discussed below, this interpretation would have required the authorized attorney to recommend commencement of a legal proceeding that the attorney would know was doomed to failure, in violation of the statutory duties of an attorney and counselor at law. Neb.Rev.Stat. § 7-105(2) (Reissue 2007) imposes upon an attorney the duty "to counsel or maintain no other actions, proceedings or defenses than those which appear to him [or her] legal and just, except the defense of a person charged with a public offense." The district court's interpretation would mandate that the authorized attorney advocate that the incarcerated person's reduction in income was involuntary even though the attorney knew that a court would hold that the reduction was voluntary. The Legislature could not have intended to provide a hollow remedy and to require authorized attorneys to violate a duty of their office. Again, the dissent ignores the futility of requiring an authorized attorney to bring an action asserting incarceration as an involuntary reduction in income, if a court can merely point to existing case law, such as Ohler, which indicates that incarceration is a voluntary reduction. We agree with the dissent that there is no evidence that the Department of Health and Human Services has been involved in the case or that it is a title IV-D *467 case. But the dissent does not explain why incarceration should be considered an involuntary reduction if those circumstances are met, but a voluntary reduction if the action is commenced by the inmate and it is not a title IV-D case.
The legislative history behind the recent amendments to § 43-512.15 supports our conclusion that the Legislature's intent in amending § 43-512.15 was to, in effect, partially over-rule decisions of the Nebraska appellate courts which declared that incarceration was considered a voluntary reduction in income for purposes of child support obligations.
The purpose of the 2007 amendment, which originated in 2007 Neb. Laws, L.B. 682, was to "allow for a modification of child support that would reflect the reduced income that is the result of the incarceration of the obligor. Currently, Nebraska courts have found incarceration to be a voluntary reduction of income and, therefore, child support a financial obligation ineligible for modification." Introducer's Statement of Intent, L.B. 682, Judiciary Committee, 100th Legislature, 1st Sess. (Mar. 8, 2007). As the senator introducing the bill explained:
The change from voluntary to involuntary would allow an incarcerated judgment creditor to modify his court-ordered child support obligation in a way that reflects his or her reduced circumstances that are the direct result of incarceration.... I understand that the Nebraska Supreme Court guidelines prohibit lowering a child support order because of the presumption that the reduction in income was due to circumstances under one's control. The position is that the incarcerated person could have foreseen that the loss of freedom would be the result of criminal activity. So I understand the rationale for the court[']s determination that incarceration is voluntary. But we think there are many inconsistencies, and that the justice is probably not being really well served by this. Chief Justice Krivosha, in his dissent in a 1985 case of [Ohler v. Ohler, 220 Neb. 272, 369 N.W.2d 615 (1985),] set out some of that thinking. ... I think we can have an honest discussion here on whether the current child support guidelines impose a nonrehabilitative effect on incarcerated persons when that person faces a huge child support debt and interest penalties upon his or her release.
Judiciary Committee Hearing, L.B. 682, 100th Leg., 1st Sess. 70-71 (Mar. 8, 2007).
In 2008, the Legislature added to § 43-512.15: "(2) The [D]epartment[of Health and Human Services], a county attorney, or an authorized attorney shall not in any case be responsible for reviewing or filing an application to modify child support for individuals incarcerated as described in subdivision (1)(b) of this section." 2008 Neb. Laws, L.B. 1014, § 43 (emphasis omitted). The stated reason for the bill, which originated as 2008 Neb. Laws, L.B. 774, was as follows:
Incarceration is now considered to be an involuntary reduction in net monthly income for purposes of child support obligations rather than a voluntary reduction in income as it was prior to last year's law change.
LB 774 provides that the Department of Health and Human Services, its authorized attorney or the county attorney will not in any case be responsible for reviewing or filing an application to modify child support for incarcerated individuals.
Introducer's Statement of Intent, L.B. 774, Judiciary Committee, 100th Legislature, 2d Sess. (Jan. 23, 2008).
*468 During testimony on L.B. 774, the introducer of the 2007 bill discussed above stated that following adoption of that bill,
[c]ounty attorneys were concerned that the law was not clear as to their duties to take affirmative action to commence the proceedings to adjust the child support. And the law itself did not provide that they had that duty, but they felt that they might have that duty under the act. LB774 would make it clear that neither the attorney for the Department of Health and Human Services nor the county attorney has an affirmative duty to file an application to reduce child support. We think that that will clarify the situation that the person[s] requesting the modification of child support would have to take some affirmative action to have that done, probably through their own personal attorney.
Judiciary Committee Hearing, L.B. 774, 100th Leg., 2d Sess. 43 (Jan. 23, 2008).
In representing the Nebraska County Attorneys Association in support of the bill, the Seward County Attorney stated:
LB 774 puts the responsibility on the party seeking the modification. The incarcerated individual[s get] the benefit and ha[ve] the best access to the information surrounding their incarceration, specifically the time that they are incarcerated, when they are going to be paroled, and if they're going to be on any sort of work release. Also, LB 774 allows for [the Department of] Health and Human Services, the authorized attorney, and the county attorneys to focus their resources on the children whose parents have the ability to support them, otherwise resources and court time [are] actually spent modifying child support downward, without much benefit to the child.
Id. at 47.
We conclude that the Legislature intended for an incarcerated inmate to be able to file his or her own complaint to modify child support and for the incarceration to be considered an involuntary reduction of income when the conditions of § 43-512.15(1)(b) are met. We cannot ignore the evident intent of the legislative act merely because the Legislature could have chosen a better section in which to codify its amendment. Having settled the meaning of the statute, an appellate court must give effect to the purpose and intent of the Legislature. See Southern Neb. Rural P.P. Dist. v. Nebraska Electric, 249 Neb. 913, 546 N.W.2d 315 (1996). We therefore reject the district court's interpretation of the statute.

Material Change in Circumstances.
The district court determined that "the amendment ... does not constitute a material change in circumstances." We disagree. In Sneckenberg v. Sneckenberg, 9 Neb.App. 609, 616 N.W.2d 68 (2000), we held that an upward revision of the support required under the child support guidelines was a material change of circumstances that warranted upward modification of a former husband's child support obligation, independently of changes in his income. Similarly, in Schmitt v. Schmitt, 239 Neb. 632, 477 N.W.2d 563 (1991), the Nebraska Supreme Court held that the adoption of child support guidelines constituted a material change of circumstances warranting a change in child support obligations, notwithstanding that it resulted from a change of law rather than from actions of the parties. See, also, Babka v. Babka, 234 Neb. 674, 452 N.W.2d 286 (1990) (holding that change in federal tax law regarding dependency exemptions constituted material change of circumstances which would justify modification of support order). We conclude that the change of law making incarceration an involuntary *469 reduction in income under certain conditions rather than a voluntary reduction is a material change of circumstances. Even though Stauffer's circumstances have not changed from his last action to modify his support obligation, the change of law constitutes a material change of circumstances. Accordingly, we reverse, and remand for further proceedings.

CONCLUSION
For over 20 years, Nebraska courts have declined to allow an incarcerated parent to obtain a reduction in his or her child support obligation based upon reduced earnings as a result of being incarcerated. Under § 43-512.15, as recently amended, a child support obligor's incarceration is now considered an involuntary reduction in income under certain circumstances. We conclude that the Legislature intended to change the state of the law and that the change of law constitutes a material change of circumstances. We reverse, and remand for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
CARLSON, Judge, dissenting.
I respectfully dissent from the conclusion reached by the majority that the Legislature's intent in amending § 43-512.15 was to effectively overrule prior holdings in Nebraska case law that incarceration was considered a voluntary reduction in income for the purpose of determining child support obligations. The majority concludes that the Legislature clearly intended that an incarcerated inmate be able to file his or her own modification action and that the fact of incarceration be considered an involuntary reduction of income when the provisions of § 43-512.15(1)(b) are met.
In my opinion, the plain language of the statute forecloses such a result. When asked to interpret a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. To determine the legislative intent of a statute, a court generally considers the subject matter of the whole act, as well as the particular topic of the statute containing the questioned language. Harvey v. Nebraska Life & Health Ins. Guar. Assn., 277 Neb. 757, 765 N.W.2d 206 (2009).
Neb.Rev.Stat. § 43-512.10 (Reissue 2008) states that "[s]ections 43-512 to 43-512.10 and 43-512.12 to 43-512.18 shall be interpreted so as to facilitate the determination of paternity, child, spousal, and medical support enforcement, and the conduct of reviews under such sections." As summarized, these sections apply to child support cases in which a party has applied for services under title IV-D of the federal Social Security Act. Section 43-512.12(1) requires the Department of Health and Human Services to determine whether such cases should be referred to a county attorney or authorized attorney for filing a modification action when the present obligation varies from the Supreme Court child support guidelines by more than the percentage amount established by court rule and the variation is due to financial circumstances which have lasted at least 3 months and can reasonably be expected to last for another 6 months.
I think the district court properly concluded that § 43-512.15(1) is inapplicable to Stauffer's case. The subsection applies only to a county attorney in certain cases referred from the Department of Health and Human Services, and the entire statutory scheme refers only to title IV-D cases. No evidence was presented at the hearing on Stauffer's complaint to modify that the Department of Health and Human *470 Services has been involved in this case or that the case is a title IV-D case.
In making determinations of legislative intent, I believe that the majority has read the statutory language independently of its context and has improperly extended the clear statutory language in these statutes to all child support modification actions, regardless of whether these actions come within the clear parameters of the statute. The language of these statutes is clear and unambiguous; it is not necessary to "interpret" the Legislature's meaning.
I would affirm the decision of the district court to deny Stauffer's complaint to modify his child support obligation.